[No. S102251. Apr. 26, 2004.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Plaintiffs and Appellants, v.
JOHN GARAMENDI, as Insurance Commissioner, etc., et al., Defendants and Respondents;
SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE OF GREATER LOS ANGELES, INC., et al., Interveners and Respondents.

1032

COUNSEL

Heller Ehrman White & McAuliffe, Paul Alexander, Vanessa Wells and Victoria Collman Brown for Plaintiffs and Appellants.

LeBoeuf, Lamb, Greene & MacRae, Sonnenschein Nath & Rosenthal, Thomas E. McDonald and Sanford Kingsley for Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, United Services Automobile Association and USAA Casualty Insurance Company as Amici Curiae on behalf of Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, Roger M. Milgrim, George L. Graff, Romy Berk, Thomas J. Finn, Brian Moran, Paul W. Cane, Jr.; National Chamber Litigation Center and Robin S. Conrad for California Chamber of Commerce, Chamber of Commerce of the United States, the California Business Roundtable, California Healthcare Institute and the Pharmaceutical Research and Manufacturers of America as Amici Curiae on behalf of Plaintiffs and Appellants.

Horvitz & Levy, David S. Ettinger, Mitchell C. Tilner, Daniel J. Gonzalez; Barger & Wolen, Steven H. Weinstein and Robyn E. King for Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, The Association of California Insurance Companies, The Personal Insurance Federation of California and The National Association of Independent Insurers as Amici Curiae on behalf of Plaintiffs and Appellants.

Fred J. Hiestand for the Civil Justice Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Randall P. Borcherding and Kristian D. Whitten, Deputy Attorneys General, for Defendants and Respondents.

Public Advocates, Mark Savage and Thorn Ndaizee Meweh for Interveners and Respondents Southern Christian Leadership Conference of Greater Los Angeles, Inc., and Consumers Union of U.S., Inc.

Gail Hillebrand for Intervener and Respondent Consumers Union of U.S., Inc.

Kevin Stein for California Reinvestment Committee as Amicus Curiae on behalf of Interveners and Respondents.

John A. Russo, City Attorney (Oakland), Barbara J. Parker, Chief Assistant City Attorney, and Daniel Rossi, Deputy City Attorney, for City of Oakland as Amicus Curiae on behalf of Interveners and Respondents.

Dennis J. Herrera, City Attorney (San Francisco), Owen J. Clements, Chief of Special Litigation, and Ellen M. Forman, Deputy City Attorney, for City and County of San Francisco as Amicus Curiae on behalf of Interveners and Respondents.

Harvey Rosenfield and Pamela Pressley for The Proposition 103 Enforcement Project as Amicus Curiae on behalf of Interveners and Respondents.

## OPINION

**BROWN, J.**—In 1988, voters passed Proposition 103, which made "numerous fundamental changes in the regulation of automobile and other types of insurance." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812 [258 Cal.Rptr. 161, 771 P.2d 1247] (*Calfarm*).) "Formerly, the so-called 'open competition' system of regulation had obtained, under which 'rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner . . . .' " (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 240 [32 Cal.Rptr.2d 807, 878 P.2d 566] (*20th Century*).) Proposition 103 altered this system by adding to the Insurance Code article 10—"entitled 'Reduction and Control of Insurance Rates.' ([Ins. Code,] §§ 1861.01–1861.14.)" (*California Auto. Assigned Risk Plan v. Garamendi* (1991) 232 Cal.App.3d 904, 907 [283 Cal.Rptr. 562].) This new article required, among other things, approval by the Insurance Commissioner of the State of California (hereafter Commissioner)[1] for all insurance rate increases (see *id.* at pp. 909–910), and "provide[d] for consumer participation in the administrative ratesetting process" (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 753 [92 Cal.Rptr.2d 132]).

■ Pursuant, in part, to statutes enacted as part of Proposition 103, the Commissioner promulgated section 2646.6 of title 10 of California Code of Regulations (hereafter Regulation 2646.6).[2] Under Regulation 2646.6, subdivision (a), "[e]ach insurer writing in excess of ten million dollars in" certain "lines of insurance . . . [o]n or before March 1 of every year . . . shall file a Community Service Statement . . . with the Department of Insurance's Statistical Analysis Bureau in Los Angeles." The statement must contain specified statistical information concerning the insurer's business in the State of California, organized by ZIP code, including information described as

---

[1] For convenience, we use "Commissioner" to refer to the Insurance Commissioner and/or the California Department of Insurance.

[2] This opinion addresses the pre-March 15, 2003, version of the regulation. Effective March 15, 2003, the Commissioner amended Regulation 2646.6. These amendments do not affect our construction of subdivision (c) of Regulation 2646.6—which did not materially change—and the related Insurance Code provisions.

"Record A data."[3] Record A data consists of "the total earned exposures and total earned premiums, and the total number of exposures new, exposures canceled, and exposures non-renewed, stated separately" for each line of

---

[3] "The insurer's Community Service Statement shall set forth, for the reporting period which shall consist of the calendar year ending on the immediately preceding December 31, for each Zone Identification Program ('ZIP') code in every county in California in which it sells insurance or maintains agents: [¶] (1) the total earned exposures and total earned premiums, and the total number of exposures new, exposures canceled and exposures non-renewed, stated separately for the following coverages: [¶] (A) private passenger automobile liability (excluding policies issued through the California Automobile Assigned Risk Plan); [¶] (B) private passenger automobile physical damage; [¶] (C) homeowners multiple peril (excluding policies issued through the California FAIR plan); [¶] (D) commercial multiple peril, by ZIP code for the location of individual risks (excluding policies for which the annual premium is more than $7,500); [¶] (E) commercial automobile liability (excluding policies issued through the California Automobile Assigned Risk Plan and excluding policies for which the annual premium is more than $7,500); [¶] (F) commercial automobile physical damage (excluding policies for which the annual premium is more than $7,500); [¶] (G) fire (excluding policies issued through the California FAIR Plan) (as specified in the Department of Insurance Statistical Plan, dated June 2, 1995); [¶] (H) liability other than automobile (excluding professional liability coverages and excluding all commercial policies for which the annual premium is more than $7,500). [¶] (2) by service performed at each office, the number of offices maintained in the ZIP code during the reporting period; (For purposes of this section, 'service' means claims service, marketing or sales service.) Where more than one service is performed at an office, the insurer shall categorize the office based upon the service provided at that office. [¶] (3) the number of independent, employed or captive agents or agencies and the number of employed or independent claims adjusters maintaining offices (including home offices) in the ZIP code during the reporting period; [¶] To be counted for purposes of this section, an office must be open to the general public no fewer than 37.5 hours per week at least 50 weeks per year. A new office opened at any time during the reporting period shall be counted if it has been open at least 60 consecutive business days during the reporting period. An office closed at any time during the reporting period shall be counted unless it has been closed for more than 60 consecutive business days during the reporting period. [¶] (4) for an insurer distributing through direct solicitation, the number of direct mail or telephone solicitations for new insurance business made during the reporting period to addresses in the ZIP code; [¶] (5) the number of agents and claims adjusters maintaining offices in the ZIP code during the reporting period who identified themselves as conversant in a language other than English, listed by language as specified in the Department of Insurance's Statistical Plan, dated June 2, 1995. [¶] (6) The race or national origin, and gender, of each applicant who is a natural person, as provided by the applicant on a separate, detachable form that refers to the application. The form shall state that this information is requested by the State of California in order to monitor the insurer's compliance with the law, that the applicant is not required to provide this information but is encouraged to do so, and that the insurer may not use this information for underwriting or rating purposes. A sample of this form shall be included in the Department of Insurance's Statistical Plan, dated June 2, 1995. No such information shall be used for purposes of underwriting or rating any applicant. [¶] For purposes of this section, race or national origin means one of the following: [¶] (A) American Indian or Alaskan Native [¶] (B) Asian or Pacific Islander [¶] (C) African-American [¶] (D) Latino [¶] (E) White [¶] (F) Other [¶] (G) Information not provided by applicant or policyholder. [¶] (7) The number of applications received for each line of insurance as listed in (b)(1) above. [¶] (8) The number of applications for which the insurer declined to provide each of the coverages listed in (b)(1) above." (Reg. 2646.6, subd. (b).)

insurance and ZIP code. (Reg. 2646.6, subd. (b)(1).) The statement, including the record A data, is subject to Insurance Code section 1861.07, pursuant to Regulation 2646.6, subdivision (c). And Insurance Code section 1861.07 provides that "[a]ll information provided to the commissioner pursuant to this article shall be available for public inspection, and the provisions of Section 6254(d) of the Government Code and Section 1857.9 of the Insurance Code shall not apply thereto."

In this case, we consider the validity of the public inspection provision found in Regulation 2646.6, subdivision (c) and the scope of the public disclosure mandate of Insurance Code section 1861.07. We conclude that (1) the public inspection provision of Regulation 2646.6, subdivision (c) is valid; and (2) Insurance Code section 1861.07 does not incorporate the exemption from disclosure found in Government Code section 6254, subdivision (k), and does not therefore exempt information protected by the trade secret privilege from disclosure.

## I.

As required by Regulation 2646.6, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company and State Farm General Insurance Company (collectively State Farm) filed a community service statement with the Commissioner in 1998. In a letter accompanying its statement, State Farm wrote: "STATE FARM INSURANCE COMPANIES CONSIDER[] THE INFORMATION CONTAINED IN RECORD A, B, AND C HEREIN AS PRIVILEGED AND CONFIDENTIAL. IT IS PROPRIETARY IN NATURE, CONSTITUTES TRADE SECRET MATERIAL, AND IS NOT TO BE DISSEMINATED BEYOND THE DESIGNATED RECIPIENTS WITHOUT THE EXPRESS WRITTEN CONSENT OF THE STATE FARM INSURANCE COMPANIES."

Despite State Farm's invocation of the trade secret privilege, the Commissioner, without notifying State Farm beforehand, provided its community service statement to David "Birny" Birnbaum upon his request pursuant to Regulation 2646.6 and Insurance Code section 1861.03. After learning about this, State Farm sent a letter to the Commissioner, protesting the release of its trade secrets to Birnbaum and asking the Commissioner to take all reasonable steps to retrieve this information. The Commissioner then sent a letter to Birnbaum stating that it had "inadvertently released" the information and asking him to return it. Birnbaum, however, refused to do so.

State Farm then filed this action against Birnbaum and the Commissioner, seeking declaratory and injunctive relief. In its complaint, State Farm alleged that "the information contained in the Community Service Statement is

confidential and constitutes trade secrets belonging to State Farm" and is not subject to public inspection under Insurance Code section 1861.07. It sought, among other things, the return of its trade secret information and an injunction barring Birnbaum from using or disclosing that information.

Soon thereafter, the Southern Christian Leadership Conference of Greater Los Angeles, Inc., and the Consumers Union of U.S., Inc. (collectively interveners), successfully intervened in the action. In their complaint, the interveners sought a declaration "that the Community Service Statement and data insurers file with the [Commissioner] . . . are public records subject to public inspection and not exempt from public disclosure."

State Farm then amended its complaint. The amended complaint included the interveners and clarified that only the record A data was a trade secret. State Farm also added two declaratory relief claims. First, it sought "a declaration that 10 C.C.R. § 2646.6(c) is invalid to the extent that it purports to make Insurance Code § 1861.07 applicable to data submitted by State Farm pursuant to 10 C.C.R. § 2646.6, and purports to make data submitted in confidence by State Farm pursuant to 10 C.C.R. § 2646.6 publicly available." Second, it sought a "declaration that Insurance Code § 1861.07 does not abrogate trade secret rights; that trade secret protections apply to information submitted under Insurance Code § 1861.07; that State Farm's data submitted in Record A . . . constitutes a trade secret; and that, if Insurance Code § 1861.07 applies to data submitted pursuant to 10 C.C.R. § 2646.6, State Farm's data submitted in Record A to each of its Community Service Statements must be held as confidential by the [Commissioner] and cannot be produced pursuant to a Public Records Act request."

After the trial court dismissed Birnbaum from the action,[4] both the Commissioner and the interveners moved for summary judgment. The court granted both motions. In granting the Commissioner's motion, the court held that the Commissioner "did not exceed [his] powers in enacting and implementing 10 C.C.R. § 2646.6(c), and State Farm has not shown that there is an exception to the requirements of 10 C.C.R. § 2646.6(c) and Insurance Code § 1861.07 for information which would otherwise be considered a trade secret." In granting the interveners' motion, the court held that (1) "there is no triable issue as to any material fact; there is no showing by [State Farm] of economic value of the Record A data in the Community Service Statements, Cal. Regs. Code tit. 10, § 2646.6; and the Community Service Statements and Record A data are not a trade secret"; (2) "the California Department of Insurance did not exceed its powers in promulgating Section 2646.6 of Title

---

[4] Birnbaum filed a motion to strike pursuant to Code of Civil Procedure section 425.16. The trial court granted the motion and entered judgment for Birnbaum. State Farm filed a notice of appeal but later abandoned the appeal.

10 of the California Code of Regulations to ensure that insurers do not unfairly discriminate against poor and ethnic communities"; and (3) "the Community Service Statements and data insurers file with the California Department of Insurance pursuant to Cal. Regs. Code tit. 10, § 2646.6 are public records subject to public inspection under Regulation § 2646.6(c) and Cal. Ins. Code § 1861.07 and are not exempt from public disclosure."

The Court of Appeal affirmed.[5] First, the court concluded that State Farm had standing to bring an action to prevent the Commissioner from disclosing its record A data. Second, the court held that the Commissioner did not exceed his statutory authority by making community service statements subject to the public disclosure mandate of Insurance Code section 1861.07. Third, the court found no trade secret exception to the public disclosure mandate of Insurance Code section 1861.07. According to the court, Insurance Code section 1861.07 declared a general rule requiring disclosure "*without* exceptions" and did not incorporate the exemption from disclosure for statutory privileges found in Government Code section 6254, subdivision (k). Thus, State Farm could not shield its record A data from public inspection by asserting the trade secret privilege codified in Evidence Code section 1060. Finally, the court held that, even if the trade secret privilege applied, it "still would not protect State Farm's record A data." Relying on *Uribe v. Howie* (1971) 19 Cal.App.3d 194 [96 Cal.Rptr. 493], the court held that Evidence Code section 1060, even if applicable, could not shield this data from disclosure because "the public interest is better served by disclosure . . . than by nondisclosure." As a result, the court declined to consider State Farm's contention that there was a triable issue of fact as to whether its record A data is a trade secret.

We granted review.

## II.

Before the Court of Appeal, State Farm contended the Commissioner exceeded his "statutory authority by. making community service statements subject to the public disclosure mandate of Insurance Code section 1861.07 and that California Code of Regulations, title 10, section 2646.6, subdivision (c) [was] invalid to the extent that it purport[ed] to do so." According to State Farm, only information submitted pursuant to article 10 of chapter 9 of part 2 of division 1 of the Insurance Code (hereafter article 10) must be

---

[5] Pending consideration of the appeal, the Court of Appeal "temporarily enjoined the Commissioner, the Department, and Interveners from disclosing data, information, or potential trade secrets that State Farm provided under [Regulation] 2646.6, the record A data."

disclosed under Insurance Code section 1861.07, and community service statements do not contain such information. The court rejected this contention. Citing Insurance Code section 1861.03,[6] it concluded that "article 10 is not only about rates and rate regulation; it also concerns other factors that may impermissibly affect the availability of insurance." Thus, "[i]t was well within the authority of the Commissioner to conclude that requiring insurers to submit the information contained in those statements would facilitate his obligations to implement and enforce article 10." In a convoluted argument, State Farm now challenges this holding. We, however, find the public inspection provision of Regulation 2646.6, subdivision (c) to be valid.

 In reviewing the validity of a regulation, "[o]ur function is to inquire into the legality of the regulations, not their wisdom." (*Morris v. Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) The Commissioner "has broad discretion to adopt rules and regulations as necessary to promote the public welfare." (*Calfarm, supra,* 48 Cal.3d at p. 824.) Thus, our task "is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, § 11374)." (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].) In this case, State Farm only challenges the authority of the Commissioner to enact the public inspection provision of Regulation 2646.6, subdivision (c). We must therefore conduct an independent examination (see *20th Century, supra,* 8 Cal.4th at pp. 271–272) and determine "whether in enacting the specific rule" the Commissioner "reasonably interpreted the legislative mandate" (*Fox v. San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 656 [215 Cal.Rptr. 565]).

 The challenged portion of Regulation 2646.6, subdivision (c) provides that community service statements are subject to Insurance Code section 1861.07. As relevant here, Insurance Code section 1861.07 states that "all information" submitted to the Commissioner "pursuant to" article 10 "shall be available for public inspection . . . ." Because all information provided pursuant to article 10—which encompasses Insurance Code sections 1861.01 to 1861.16—is subject to public disclosure under Insurance Code section 1861.07, the validity of the regulation depends on whether the statutes in article 10 authorize the Commissioner to require community service statements.

---

[6] As relevant here, Insurance Code section 1861.03, subdivision (a) provides that "[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act (Sections 51 to 53, inclusive, of the Civil Code), and the antitrust and unfair business practices laws (Parts 2 (commencing with Section 16600) and 3 (commencing with Section 17500) of Division 7 of the Business and Professions Code)."

■ In answering this question, we first find that Office of Administrative Law (OAL) opinions approving Regulation 2646.6 are irrelevant. "The approval of a regulation . . . by the [OAL] . . . *shall not be considered* by a court in any action for declaratory relief brought with respect to a regulation." (Gov. Code, § 11350, subd. (c), italics added; see also *Jimenez v. Honig* (1987) 188 Cal.App.3d 1034, 1040, fn. 4 [233 Cal.Rptr. 817] ["The courts are precluded from considering . . . the opinion of the OAL . . . in reviewing the validity of the regulation"].) Thus, we reject State Farm's claim that we are constrained by holdings of the OAL. As such, we may consider all the article 10 statutes cited as authority for the promulgation of Regulation 2646.6, subdivision (c)—i.e., Insurance Code sections 1861.02, 1861.03 and 1861.05—in determining the regulation's validity. (See Note, foll. Regulation 2646.6.)

Nor, contrary to State Farm's contention, did the Court of Appeal consider whether Insurance Code section 1861.03 actually incorporates provisions of the Unruh Act and other business laws. Rather, the court correctly observed that Insurance Code section 1861.03 made "the business of insurance subject to the state's antitrust and unfair business practice laws and to the Unruh Civil Rights Act." (See also *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 394 [6 Cal.Rptr.2d 487, 826 P.2d 730] [Ins. Code, § 1861.03 "merely modifies preexisting law, to provide, in essence, that insurers are subject to the unfair business practices laws *in addition to* preexisting regulations under the McBride Act, as amended"].) Based on the breadth of these business laws, the court then concluded that article 10 "encompasses more than rate matters and addresses other factors that may impermissibly affect the availability of insurance."

■ In doing so, the Court of Appeal correctly found that the Commissioner did not exceed his authority by promulgating the public inspection provision of Regulation 2646.6, subdivision (c). As part of Proposition 103, article 10's stated purpose was " 'to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable Insurance Commissioner, and to ensure that insurance is fair, available, and affordable for all Californians.' " (Historical and Statutory Notes, 42A West's Ann. Ins. Code (1993 ed.) foll. § 1861.01, p. 649.) To this end, article 10 gives the Commissioner broad authority over insurance rates (*California Auto. Assigned Risk Plan v. Garamendi, supra,* 232 Cal.App.3d at pp. 913–914), and expressly precludes him from approving rates that are "excessive, inadequate, unfairly discriminatory or otherwise in violation of" chapter 9 of the Insurance Code (Ins. Code, § 1861.05, subd. (a)). Through Insurance Code section 1861.03, subdivision (a), the article also subjects the business of insurance to laws prohibiting discriminatory and unfair business practices. Thus, article 10 is not limited in scope to rate regulation. It

also addresses the underlying factors that may impermissibly affect rates charged by insurers and lead to insurance that is unfair, unavailable, and unaffordable.

██ As such, the Commissioner undoubtedly has the authority under article 10 to gather any information necessary for determining whether these factors are impermissibly affecting the fairness, availability, and affordability of insurance. This information necessarily includes statistical data relevant to the Commissioner's determination that a California community is underserved by the insurance industry. (See Reg. 2646.6, subd. (c) [using information from community service statements, the Commissioner shall "issue the Commissioner's Report on Underserved Communities which will report those communities within California, designated by ZIP code, that the Commissioner finds to be underserved by the insurance industry"].) Therefore, the Commissioner reasonably concluded that community service statements fall within his legislative mandate under article 10. Accordingly, we conclude that the Commissioner did not exceed his statutory authority by promulgating Regulation 2646.6, subdivision (c), and subjecting these statements to the public disclosure mandate of Insurance Code section 1861.07.

## III.

Although the public inspection provision of Regulation 2646.6, subdivision (c) is a valid regulation, the scope of disclosure required by the regulation depends on the scope of disclosure required by Insurance Code section 1861.07. According to State Farm, Insurance Code section 1861.07, by expressly barring the application of the exemption from public disclosure codified in Government Code section 6254, subdivision (d), establishes that the rest of Government Code section 6254 applies. Specifically, State Farm contends Government Code section 6254, subdivision (k)—which exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege"—controls. Thus, trade secret information privileged under Evidence Code section 1060 should be exempt from public disclosure under Insurance Code section 1861.07. (See *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 656 [230 Cal.Rptr. 362, 725 P.2d 470] [Gov. Code, § 6254, subd. (k) "merely incorporates other prohibitions established by law"].)

The interveners contend Insurance Code section 1861.07 establishes an absolute rule in favor of public disclosure, and its language barring the

application of Government Code section 6254, subdivision (d) merely buttresses this rule. Thus, according to the interveners, neither Government Code section 6254, subdivision (k) nor Evidence Code section 1060 applies to a records request. As explained below, we agree with the interveners.

"When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727], quoting *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) At the same time, "we do not consider . . . statutory language in isolation." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 [110 Cal.Rptr.2d 809, 28 P.3d 860].) Instead, we "examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040 [130 Cal.Rptr.2d 672, 63 P.3d 228].) Moreover, we " 'read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360], quoting *People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].) "These rules apply equally in construing statutes enacted through the initiative process." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

We now apply these rules. Insurance Code section 1861.07 states: "All information provided to the commissioner pursuant to [article 10] shall be available for public inspection, and the provisions of Section 6254(d) of the Government Code and Section 1857.9 of the Insurance Code shall not apply." The first clause broadly requires public disclosure of "[a]*ll* information provided to the commissioner pursuant to" article 10—which, by definition, includes record A data. (Ins. Code, § 1861.07, italics added.) Thus, Insurance Code section 1861.07, on its face, subjects State Farm's record A data to public inspection.

■ The second clause of Insurance Code section 1861.07—which states that two specific statutory exemptions from disclosure do not apply—does not alter this conclusion. The statutes listed in the second clause—Government Code section 6254, subdivision (d)[7] and Insurance Code section 1857.9[8] — specifically exempt from disclosure records relating to regulatory information provided by insurers to state agencies. Because the application of these exemptions would nullify the broad disclosure mandate of Insurance Code section 1861.07, the drafters of Proposition 103 presumably added the second clause to make clear that these exemptions do not apply. As such, this clause does not establish that the other statutory exemptions from disclosure found in Government Code section 6254—such as section 6254, subdivision (k)—do apply. Indeed, the drafters' use of the inclusive term "all" to describe the information subject to public disclosure bolsters this construction of Insurance Code section 1861.07. (See *California Assn. of Dispensing Opticians v. Pearle Vision Center* (1983) 143 Cal.App.3d 419, 429 [191 Cal.Rptr. 762] [use of "inclusive terms such as 'in any form directly or indirectly' and 'or otherwise' " indicated that the listed items were not intended to be exclusive], disapproved on another ground in *Leach v. City of San Marcos* (1989) 213 Cal.App.3d 648, 661 [261 Cal.Rptr. 805]; *Worthington v. Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 388 [134 Cal.Rptr. 507] ["The general expression ['any and all'] we deem not to be limited by the description of two common positions of persons engaged

---

[7] Government Code section 6254, subdivision (d) provides that: "Except as provided in Section 6254.7 and 6254.13, nothing in this chapter shall be construed to require disclosure of records that are any of the following: [¶] . . . (d) Contained in or related to any of the following: [¶] (1) Applications filed with any state agency responsible for the regulation or supervision of the issuance of securities or of financial institutions, including, but not limited to, banks, savings and loan associations, industrial loan companies, credit unions, and insurance companies. [¶] (2) Examination, operating, or condition reports prepared by, on behalf of, or for the use of, any state agency referred to in paragraph (1). [¶] (3) Preliminary drafts, notes, or interagency or intra-agency communications prepared by, on behalf of, or for the use of, any state agency referred to in paragraph (1). [¶] (4) Information received in confidence by any state agency referred to in paragraph (1)."

[8] Insurance Code section 1857.9 states in relevant part that "(a) An insurer doing business in this state, except as provided by subdivision (f), shall report the information specified by the commissioner that is collected by a licensed advisory organization on an annual basis for each class of insurance designated in the prior calendar year by the commissioner pursuant to subdivision (b) for policies issued or issued for delivery in California. The commissioner shall waive the requirements of this subdivision for any information that has been provided to the Insurance Services Office by the insurer, if the Insurance Services Office provides the information to the commissioner on or before the date on which the insurer is required to file the statement. . . . [¶] . . . [¶] (i) The information provided pursuant to subdivision (a) shall be confidential and not revealed by the department, except that the commissioner may publish an analysis of the data in aggregate form or in a manner which does not disclose confidential information about identified insurers or insureds."

by others"].) Thus, when viewed in context, the exemptions listed in Insurance Code section 1861.07 "are meant to be examples rather than an exhaustive listing of all those" statutory exemptions that are inapplicable. (*California Assn. of Dispensing Opticians,* at p. 429.)

Such a construction comports with the purpose behind Proposition 103. Proposition 103 was enacted to " 'ensure that insurance is fair, available, and affordable for all Californians.' " (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 564 [53 Cal.Rptr.2d 878].) To achieve this goal, the drafters established a public hearing process for reviewing insurance rate changes. (See Ins. Code, §§ 1861.05, 1861.055, 1861.08.) In doing so, the drafters sought to "enable consumers to permanently unite to fight against insurance abuse . . . ." (Ballot Pamp., Gen. Elec. (Nov. 8, 1988) arguments in favor of Prop. 103, p. G88.) By giving the public access to all information provided to the Commissioner pursuant to article 10—which was enacted by Proposition 103—our construction of Insurance Code section 1861.07 is wholly consistent with Proposition 103's goal of fostering consumer participation in the rate-setting process.

Nonetheless, State Farm contends our rules of statutory construction compel a contrary conclusion. According to State Farm, Insurance Code section 1861.07, by specifying that the exemption from disclosure found in Government Code section 6254, subdivision (d) does not apply, establishes that the rest of Government Code section 6254—including its other exemptions from disclosure, such as the exemption codified in subdivision (k)—does apply. Otherwise, the clause would be mere surplusage and serve no purpose, in direct contravention of our rules of statutory construction. (See, e.g., *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 [19 Cal.Rptr.2d 882, 852 P.2d 377] ["An interpretation that renders statutory language a nullity is obviously to be avoided"].)

State Farm also claims that the rule of statutory construction, *expressio unius est exclusio alterius,* establishes that the other exemptions from disclosure codified in Government Code section 6254 should apply. Under this rule, "where exceptions to a general rule are specified by statute, other exceptions are not to be presumed unless a contrary legislative intent can be discerned." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 116 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) According to State Farm, the second clause of Insurance Code section 1861.07 creates an exception to the general rule—that records identified in Government Code section 6254 may be exempt from disclosure—for those records identified in subdivision (d). Thus, it contends no exception should be presumed for those records identified in any other part of Government Code section 6254, including subdivision (k). (See *Mountain Lion Foundation,* at p. 116.)

 These rules of statutory construction do not, however, apply here. As explained above, the language of Insurance Code section 1861.07, when viewed in context, is not ambiguous and, by its terms, requires public disclosure of the record A data. (See *ante*, at pp. 1043–1044.) The rules cited by State Farm therefore "cannot perform [their] proper role of resolving an ambiguity in statutory language or uncertainty in legislative intent because here we encounter neither ambiguity nor uncertainty." (*Williams v. Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].) "In these circumstances there is no room for the proposed rule[s] of construction." (*Ibid.*) Indeed, we have long recognized that these rules do not control where, as here, the statutory language "may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539, fn. 10 [147 Cal.Rptr. 157, 580 ·P.2d 657].)

 Finally, the fact that insurers may invoke the trade secret privilege in the public hearing process established by Proposition 103, pursuant to Insurance Code section 1861.08, does not dictate a different result.[9] There is nothing anomalous about precluding insurers from invoking the trade secret privilege after they have already submitted trade secret information to the Commissioner pursuant to a regulation validly enacted under article 10 (see *ante*, at p. 1045), while permitting them to invoke the privilege in response to a request for information in a public rate hearing. Insurance Code section 1861.07 merely requires public disclosure of "information provided to the commissioner pursuant to" article 10. By definition, this information is relevant to the Commissioner's mandate under article 10 to " 'ensure that insurance is fair, available, and affordable for all Californians.' " (Historical and Statutory Notes, 42A West's Ann. Ins. Code, *supra*, foll. § 1861.01 at p. 649.) Given that article 10 seeks to encourage public participation in the rate-setting process (see *ante*, at p. 1045), precluding insurers from withholding trade secret information already provided to the Commissioner because of its relevance under article 10 (see *ante*, at pp. 1040–1042) is certainly reasonable.[10] And such a conclusion does not render meaningless the

---

[9] Under Insurance Code section 1861.08, rate hearings are "conducted pursuant to Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code . . . ." Because Government Code section 11513, subdivision (c) provides that "[t]he rules of privilege shall be in effect to the extent they are otherwise required by statute to be recognized at the hearing," the trade secret privilege codified in Evidence Code section 1060 applies in these hearings.

[10] In reaching this conclusion, we decide only that information already provided to the Commissioner pursuant to a validly enacted regulation under article 10 is not protected by the trade secret privilege.

insurers' power to invoke the trade secret privilege at the public rate hearing, because insurers may still prevent disclosure of trade secret information not already provided to the Commissioner pursuant to article 10.

 Accordingly, we conclude that Insurance Code section 1861.07 does not incorporate the exemption to disclosure found in Government Code section 6254, subdivision (k), and that trade secret information is therefore not exempt from disclosure. Because we find that State Farm may not invoke the trade secret privilege to prevent disclosure of its record A data under Insurance Code section 1861.07, we decline to address the other issues raised by State Farm.[11]

### DISPOSITION

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

On June 9, 2004, the opinion was modified to read as printed above.

---

[11] Specifically, we do not determine whether (1) a trade secret owner has standing to assert the trade secret privilege and prevent the Commissioner from disclosing its trade secret information pursuant to a records request under Insurance Code section 1861.07; (2) a trade secret owner has waived the trade secret privilege by submitting its trade secrets in its community service statements; and (3) the "injustice" exception to the trade secret privilege permits disclosure despite the privilege under the facts of this case.