[No. D060730. Fourth Dist., Div. One. July 18, 2012.]

In re D.S. et al., Persons Coming Under the Juvenile Court Law.
ELIZABETH D., Plaintiff and Appellant, v.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Defendant and Respondent;
CRYSTAL S., Objector and Respondent.

COUNSEL

Valerie N. Lankford, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Defendant and Respondent.

Sahyeh S. Riopelle, under appointment by the Court of Appeal, for Objector and Respondent.

Amy Z. Tobin, under appointment by the Court of Appeal, for Minors.

OPINION

**O'ROURKE, J.**—Elizabeth D. appeals a juvenile court order denying her petition to vacate the finding that her children's stepmother was their presumed mother under Family Code[1] section 7611, subdivision (d). We reverse.

## INTRODUCTION

Elizabeth D. is the natural mother of D.S. and E.S. At each child's birth, she and the children's father, Derrick S., executed a voluntary declaration of paternity. Elizabeth cared for the children until 2004, when Derrick was granted sole legal and physical custody. She stopped visiting and contacting the children after May 2007. Derrick's wife, Crystal S., raised the children and held them out as her own.

In 2011 the San Diego County Health and Human Services Agency (Agency) initiated dependency proceedings on behalf of the children. Elizabeth was not present at the jurisdictional hearing. The court granted Crystal's request for status as the children's presumed mother under section 7611, subdivision (d). A short time later, Elizabeth appeared in the dependency proceedings and petitioned the court to vacate its finding that Crystal was the children's presumed mother. The court denied Elizabeth's petition.

We conclude the juvenile court erred when it denied Elizabeth's petition to vacate its finding that Crystal was the children's presumed mother. Elizabeth's status as the children's natural mother was established by proof of her having given birth to them. (§ 7610, subd. (a).) The rebuttable presumptions of paternity described in section 7611 apply to determine the identity of a

---

[1] Unless otherwise indicated, further statutory references are to the Family Code.

child's natural mother only in very limited circumstances, none of which are present here. Except in rare cases, a maternity claim against the natural mother of the child is not an appropriate action under section 7612, subdivision (a). When a natural mother has first assumed and later appears to have abandoned her parental rights and responsibilities to her child, as here, the appropriate mechanism for a stepparent to gain parental rights is through a stepparent adoption proceeding. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Derrick S. and Elizabeth D. are the unmarried parents of D.S., born September 1999, and E.S., born February 2002 (together, the children). Derrick and Elizabeth have histories of homelessness, crime, substance abuse, domestic violence and child welfare referrals. Elizabeth's history is particularly troubled.

Derrick married Crystal S. in 2003. At that time, he and Elizabeth had joint legal and physical custody of the children. In March 2004, Derrick gained sole legal and physical custody of the children. Elizabeth last saw the children in May 2007 and had no contact with them after that date.

In April 2011 Agency detained the children in protective custody after Derrick used methamphetamine, suffered hallucinations and hurt E.S. when he tried to carry her out of the house. Crystal hit Derrick to prevent him from leaving with E.S. (Welf. & Inst. Code, § 300, subds. (a), (b), (j).)

Crystal asked the juvenile court to find she was the children's presumed mother because she raised the children, met their medical, educational and day-to-day needs, and held them out as her own. The children viewed Crystal as their mother and called her "Mom."

At the May 2011 jurisdictional and dispositional hearing, the social worker said she tried to contact Elizabeth, who lived in Los Angeles County, by mail and telephone, but did not receive any response. Elizabeth's court-appointed attorney told the court she did not know whether Elizabeth intended to appear in the proceedings and object to Crystal's request. The court, without objection, amended the petition to add Crystal as the children's presumed mother. The court declared the children dependents of the juvenile court, removed them from Derrick and Crystal's custody and ordered a plan of family reunification services. The court relieved Elizabeth's court-appointed counsel.

In June Elizabeth telephoned the social worker to request family reunification services and visitation with D.S. and E.S. At a special hearing in August,

the court appointed counsel for her. In September Elizabeth filed a petition for modification under Welfare and Institutions Code section 388 asking the court to vacate its finding that Crystal was the children's presumed mother.

A hearing on Elizabeth's Welfare and Institutions Code section 388 petition was held on September 23 and 30. The juvenile court reviewed the family court file and found that Derrick's and Elizabeth's voluntary declarations of paternity conferred a conclusive presumption of parentage to Derrick, but not to Elizabeth. The court noted there was no case law holding that the statutory mechanisms to determine and establish paternity applied to maternity. It further found that Elizabeth had qualified as the children's presumed mother in their early years; however, the presumption of maternity was rebutted by her subsequent lack of contact with the children and Crystal's maternal role in their lives. The court said the children would gain the greatest stability if they were reunified with Derrick and Crystal as their presumed parents, and Elizabeth were involved in their lives as their biological mother. The court denied Elizabeth's petition to vacate its finding that Crystal was the children's presumed mother. It amended the Welfare and Institutions Code section 300 petitions to add Elizabeth as the children's biological mother and granted her request for family reunification services, including visitation services.

## DISCUSSION

### A

#### *The Statutory Framework*

California enacted the Uniform Parentage Act in 1975.[2] (Stats. 1975, ch. 1244, § 11, p. 3196; Fam. Code, § 7600 et seq.) At the time it was enacted, the primary purpose of the UPA was to provide substantive legal equality for all children regardless of the marital status of their parents. (UPA (1973) Prefatory Note.) The remainder of the UPA is largely concerned with identifying the person against whom those rights may be asserted. (UPA (1973) Prefatory Note.)

■ The UPA provides that the parent and child relationship between a child and the natural mother may be established by proof of her having given birth to the child or under its provisions. (UPA, § 3, subd. (1); Fam. Code, § 7610, subd. (a).) With respect to identifying the father of a child, the UPA describes a set of presumptions that, on appropriate proof, indicate a particular man is the probable father of a child. (UPA, § 4; Fam. Code, § 7611.) A presumption arising under section 7611 is a rebuttable presumption affecting

---

[2] For convenience, we refer to the Uniform Parentage Act as the UPA, and to California's enactment and modification of the UPA as the Act.

the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. (UPA, § 4, subd. (b); Fam. Code, § 7612, subd. (a).)

In the event of a "rare case" in which there may be uncertainty about the identity of the mother, the UPA permits a declaratory action on the question of maternity. (UPA, Prefatory Note.) To avoid adding a layer of complexity to the statute, the UPA was drafted in terms of determining paternity. (UPA, § 21, com.) The UPA provides that insofar as practicable, its provisions concerning the father and child relationship apply to determine the existence or nonexistence of a mother and child relationship (gender-neutral rule). (UPA, § 21; Fam. Code, § 7650.) The drafters believed that the lack of applicability of certain provisions of the UPA to the mother and child relationship was obvious and actions to determine the mother's identity would be rare. (UPA, § 21, com.)

In California, the Uniform Parentage Act is only one part of a statutory scheme concerning the parent and child relationship and is set forth in part 3 of division 12 of the Family Code. (§ 7600 et seq.) The Act establishes the framework for judicial determinations of parentage, and governs paternity and custody disputes, private adoptions and dependency proceedings. (*In re M.C.* (2011) 195 Cal.App.4th 197, 211 [123 Cal.Rptr.3d 856] (*M.C.*); *In re P.A.* (2011) 198 Cal.App.4th 974, 980 [130 Cal.Rptr.3d 1123].) Parts 2 and 4 of division 12 are also relevant to our analysis. Part 2 provides mechanisms to establish conclusive presumptions of paternity through marriage (§ 7540 et seq.) and voluntary paternity declarations (§ 7550 et seq.), and sets forth procedures to validate paternity through genetic testing, when contested (§ 7570 et seq.). Part 4 provides the statutory framework to declare a child free from parental custody and control as the first step toward a private adoption by the child's stepparent or prospective adoptive parents. (§ 7800 et seq.)

Under part 2, the statutory framework creates a conclusive presumption of paternity under certain conditions for a man who is married to the natural mother of the child[3] or if unmarried, executes a voluntary declaration of paternity.[4] (§§ 7540 et seq., 7550 et seq.) There are statutory mechanisms to set aside a conclusive presumption of paternity created through marriage or a voluntary declaration of paternity. (§§ 7541, 7575, 7576, 7577.) These provisions are not part of the Act itself.

---

[3] "[T]he child of a wife cohabitating with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." (§ 7540.)

[4] A completed voluntary declaration of paternity that has been filed with the Department of Child Support Services establishes the paternity of the child and has the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. (§ 7573.)

When there is a judicial determination of parentage, the Act provides: "The parent and child relationship may be established as follows: [¶] (a) Between a child and the natural mother, it may be established by proof of her having given birth to the child, or under this part. [¶] (b) Between a child and the natural father, it may be established under this part. [¶] (c) Between a child and an adoptive parent, it may be established by proof of adoption." (§ 7610.)

Section 7611 creates a number of rebuttable presumptions of paternity.[5] A presumption of paternity arising under section 7611 is rebutted by a judgment establishing paternity of the child by another man. (§ 7611, subd. (c).) When there are competing presumptions of paternity or, under a gender-neutral reading of the Act, maternity, section 7612 governs the trial court's determination of parentage.

At issue here is the scope of section 7612, subdivision (b) to maternity claims. Prior to 2009, section 7612, subdivision (b), read: "If two or more presumptions arise under Section 7611 which conflict with each other, the presumption on which the facts is founded on the weightier considerations of policy and logic controls." Thus, only conflicting presumptions arising under section 7611 were subject to judicial resolution. (*Amy G. v. M.W.* (2006) 142 Cal.App.4th 1, 14 [47 Cal.Rptr.3d 297], abrogated by Stats. 2008, ch. 534, § 1, [holding that § 7612, subd. (b) did not apply where a claim of parentage

---

[5] Under section 7611, a man is presumed to be the natural father of a child if he is married to the child's mother and meets the conditions described in section 7540 or if unmarried, executes a voluntary declaration of paternity, or if he is described in any of the following subdivisions:

"(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court.

"(b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:

"(1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce.

"(2) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.

"(c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:

"(1) With his consent, he is named as the child's father on the child's birth certificate.

"(2) He is obligated to support the child under a written voluntary promise or by court order.

"(d) He receives the child into his home and openly holds out the child as his natural child. [¶] . . . [¶]

"(f) The child is in utero after the death of the decedent and the conditions set forth in Section 249.5 of the Probate Code are satisfied."

under § 7611 by a natural father's wife, who was raising the child, conflicted with a maternity claim by the child's natural mother under § 7610, subd. (a)].)

Effective 2009, the Legislature amended section 7612, subdivision (b) to read: "If two or more presumptions arise under Section *7610* or 7611 that conflict with each other, *or if a presumption under Section 7611 conflicts with a claim under Section 7610*, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (Italics added.) Thus, on its face, section 7612, subdivision (b) now applies to a claim of maternity arising under section 7610, subdivision (a).

B

*The Parties' Contentions*

Elizabeth and Agency[6] argue the Legislature's modification of section 7612, subdivision (b) stripped women in California of their historical means of achieving a conclusive presumption of maternity by having given birth to the child, while allowing men to retain their ability to achieve a conclusive presumption of paternity through marriage, by executing voluntary paternity declarations and by obtaining judgments of paternity. They contend that as a matter of equal protection, the paternity provisions governing voluntary declarations under section 7550 et seq. should apply to women as well as to men, and therefore the voluntary paternity declarations that Elizabeth and Derrick executed at the time of each child's birth should confer a conclusive presumption of parentage to her, as well as to Derrick.

Elizabeth and Agency further argue Crystal cannot achieve a presumption of maternity under section 7611, subdivision (d) because she is not included in the class of women entitled to that presumption, which they contend is limited to the nonbiological mother in a same-sex relationship. In addition, they argue the juvenile court erred because its findings left the children with three legal parents, contravening state law. Finally, Elizabeth contends that if Crystal was entitled to a presumption of maternity under section 7611, subdivision (d), the juvenile court did not properly resolve the competing claims on the presumption founded on the weightier considerations of policy and logic. (§ 7612, subd. (b).)

Crystal, joined by the children, claims Elizabeth's presumptive status as the children's natural mother was rebuttable under the plain terms of section 7612, subdivision (b), and the juvenile court properly found that Elizabeth's

---

[6] Elizabeth joins with the arguments raised in Agency's respondent's brief.

maternity status as the children's biological mother was rebutted by Crystal's weightier claim to parentage under section 7611, subdivision (d). Crystal contends the paternity provisions under section 7550 et seq. do not apply to the mother and child relationship. She argues the biological mother is recognized as a parent by having given birth to the child, but an unmarried biological father must take affirmative steps to assert his parentage. Crystal points out that the different statutory presumptions governing paternity and maternity, and the statutory mechanisms necessary to establish paternity, do not violate principles of equal protection. She asserts the juvenile court's finding left the children with only two parents with legal parental rights and responsibilities, not three. Finally, Crystal contends Elizabeth did not make the requisite showing that a modification of the prior order was in the children's best interests under Welfare and Institutions Code section 388.

C

*Standard of Review and Principles of Statutory Interpretation*

The arguments raised on appeal involve issues of statutory interpretation, which we review de novo. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [28 Cal.Rptr.3d 188].)

■ "In construing the meaning and significance of these revisions, we look to the words of the statutes to determine legislative intent and to fulfill the purpose of the law. [Citations.] The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57 [81 Cal.Rptr.3d 918] (*Adrianna P.*).) A reviewing court is to avoid construing a statute in a manner that would render parts of the statute surplusage. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 931 [22 Cal.Rptr.3d 530, 102 P.3d 915].) A statute is read with reference to the entire scheme of law of which it is part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71] (*State Farm*).)

D

*Analysis*

■ Traditionally, except in rare cases, the identification of the woman who has given birth to a child as that child's natural mother, with all attendant parental rights and responsibilities, has not been subject to dispute.

(*Tuan Anh Nguygen v. INS* (2001) 533 U.S. 53, 64 [150 L.Ed.2d 115, 121 S.Ct. 2053] (*Nguyen*) ["proof of motherhood . . . is inherent in birth itself"].) Identifying a child's father is not as obvious. (*Id.* at p. 65 ["it is not always certain that a father will know that a child was conceived, nor is it always clear that even the mother will be sure of the father's identity"].) "Fathers and mothers are not similarly situated with regard to the proof of biological parenthood." (*Id.* at p. 63.) "The imposition of a different set of rules for making that legal determination with respect to fathers and mothers is neither surprising nor troublesome from a constitutional perspective." (*Ibid.*) "The differential treatment is inherent in a sensible statutory scheme, given the unique relationship of the mother to the event of birth." (*Id.* at p. 64.)

█ We do not believe the Legislature intended to create a statutory scheme that would permit maternity actions to be brought in California against any woman who has given birth to a child. Such a reading of section 7612, subdivision (b) would beget nothing but confusion. The better view is that a rebuttable presumption of maternity arises only in a limited class of cases, which to date have included surrogacy, relinquishment of a child for adoption by the natural mother, abandonment at birth, where there is no competing maternity claim or where a nonbiological parent in a same-sex relationship seeks to establish his or her parentage against a biological parent of a child. In all other cases, an action raising a rebuttable presumption of maternity against a woman who has given birth to a child and intends to raise the child as her own is not appropriate. (§§ 7612, subd. (a), 7610, subd. (a); *Nguygen, supra*, 533 U.S. at p. 64; cf. *Johnson v. Calvert* (1993) 5 Cal.4th 84, 93 [19 Cal.Rptr.2d 494, 851 P.2d 776] (*Johnson*).) This view is supported by legislative history, the terms of the statute as a whole, case law and the entire scheme of law of which section 7612 is part. (Cf. *State Farm, supra*, 32 Cal.4th at p. 1043.)

The legislative history of the 2008 revisions to section 7612, subdivision (b) indicate the revisions were intended to improve the adoption process, particularly to assure the child's placement with an adoptive family would not be revoked absent extenuating circumstances, and to apply rules governing artificial insemination to donations for in vitro fertilization. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1726 (2007–2008 Reg. Sess.) as amended Aug. 12, 2008.)[7] There is nothing in the legislative history of section 7612, subdivision (b) to indicate the Legislature intended to make sweeping changes to traditional views about maternity.

---

[7] The bill was sponsored by the Academy of California Adoption Lawyers. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1726 (2007–2008 Reg. Sess.) as amended Aug. 12, 2008.)

Section 7612, subdivision (b) cannot be read without considering it within the context of the statute as a whole.[8] (*Adrianna P., supra*, 166 Cal.App.4th at p. 57.) Section 7612, subdivision (a) provides that a presumption arising "under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted *in an appropriate action* only by clear and convincing evidence." (Italics added.) Rebuttal must be appropriate in the particular circumstance. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 604 [10 Cal.Rptr.3d 205, 85 P.3d 2].) Not all actions to establish parentage by raising a rebuttable presumption of parentage under section 7611 are appropriate. (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 122 [33 Cal.Rptr.3d 46, 117 P.3d 660] [rebuttal of maternity is not appropriate where the nonbiological presumed mother in a same-sex relationship had raised the children with her partner]; *In re Nicholas H.* (2002) 28 Cal.4th 56, 70 [120 Cal.Rptr.2d 146, 46 P.3d 932] [paternity action against a nonbiological presumed father not appropriate where no other man claims paternity].) The Legislature was unlikely to have had in mind an action like the one at issue here—a challenge to the maternity of a child's natural mother years after she asserted her parentage. (Cf. *Nicholas H.*; see § 7612, subd. (d) [limiting challenges to paternity under § 7611 to two years from the date of a voluntary declaration of paternity].)

---

[8] Section 7612 states:

"(a) Except as provided in Chapter 1 (commencing with Section 7540) and Chapter 3 (commencing with Section 7570) of Part 2 or in Section 20102, a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence.

"(b) If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.

"(c) The presumption under Section 7611 is rebutted by a judgment establishing paternity of the child by another man.

"(d) Within two years of the execution of a voluntary declaration of paternity, a person who is presumed to be a parent under Section 7611 may file a petition pursuant to Section 7630 to set aside a voluntary declaration of paternity. The court's ruling on the petition to set aside the voluntary declaration of paternity shall be made taking into account the validity of the voluntary declaration of paternity, and the best interests of the child based upon the court's consideration of the factors set forth in subdivision (b) of Section 7575, as well as the best interests of the child based upon the nature, duration, and quality of the petitioning party's relationship with the child and the benefit or detriment to the child of continuing that relationship. In the event of any conflict between the presumption under Section 7611 and the voluntary declaration of paternity, the weightier considerations of policy and logic shall control.

"(e) A voluntary declaration of paternity is invalid if, at the time the declaration was signed, any of the following conditions exist:

"(1) The child already had a presumed parent under Section 7540.

"(2) The child already had a presumed parent under subdivision (a), (b), or (c) of Section 7611.

"(3) The man signing the declaration is a sperm donor, consistent with subdivision (b) of Section 7613."

Case law also supports this conclusion. Maternity challenges under section 7611 have generally occurred within the context of surrogacy, relinquishment of the child for adoption or where the biological mother of the child has never been a part of the child's life or is deceased, or same-sex relationships. "[I]n the context of same-sex relationships involving two women, courts have found a child may have a biological mother and a presumed mother, to the extent the woman who is the nonbiological [or nonadoptive] parent meets the requirements of one or more of the presumptions listed in section 7611." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 138–139 [130 Cal.Rptr.3d 821]; see, e.g., *S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023 [134 Cal.Rptr.3d 1] [upholding application of § 7611, subd. (d) to give parental rights to a former partner in a same-sex relationship who had received the adoptive mother's children into her home and held them out as her own].) The recent case of *M.C.* also concerned a same-sex marriage; however, it also involved a competing paternity claim. (*M.C., supra,* 195 Cal.App.4th at p. 202 [remanded to the trial court for resolution of the competing claims].) In other cases in which a presumption of maternity under section 7611 has been applied, the resolution of the issue did not involve competing maternity claims. (*In re Karen C.* (2002) 101 Cal.App.4th 932 [124 Cal.Rptr.2d 677] [maternity established where a woman had raised the child from birth and was the only parent the child had ever known]; *In re Salvador M.* (2003) 111 Cal.App.4th 1353 [4 Cal.Rptr.3d 705] [child's adult half sister established presumed mother status by raising the child as her own after their mother's death].)

■ The California Supreme Court's analysis in *Johnson, supra,* 5 Cal.4th 84 is pertinent here. In that case, competing maternity claims arose when a wife's ovum was fertilized in vitro by her husband's sperm and implanted in a surrogate mother. The surrogate claimed she was the child's natural mother because she had given birth to the child. (*Id.* at p. 92.) The court concluded "although the Act recognizes both genetic consanguinity and giving birth as means of establishing a mother and child relationship, when the two means do not coincide in one woman, she who intended to procreate the child—that is, she who intended to bring about the birth of a child that she intended to raise as her own—is the natural mother under California law." (*Id.* at p. 93, fn. omitted.) This supports the conclusion that where a woman is both the birth and genetic mother of a child, and intends to raise the child as her own, her legal status as the child's natural mother is conclusively established under California law.

The statutory framework of chapter 12, particularly its limitations with respect to maternity, also supports the conclusion there are only limited actions in which it is appropriate to challenge the maternity of the woman who has given birth to the child. As Elizabeth and Agency point out, and Crystal acknowledges, the statutory framework lacks any statutory mechanism for the natural mother of a child to achieve a conclusive presumption of

maternity, other than by obtaining a judgment of maternity through a court proceeding. Although part 2 of division 12 provides statutory mechanisms for a father to achieve a conclusive presumption of paternity, the Legislature has not provided such a statutory mechanism to achieve a conclusive presumption of maternity, nor has it mandated a gender-neutral application of those statutes as it did in section 7650, part of the Act. (§ 7650, subd. (a) ["Insofar as practicable, the provisions of *this part* [(div. 12, pt. 3)] applicable to the father and child relationship apply" to determine the existence or nonexistence of a mother and child relationship.] (italics added).) " ' "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' " (*In re Michael G.* (1998) 63 Cal.App.4th 700, 710 [74 Cal.Rptr.2d 642].) Where a statute contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show different legislative intent. (*Ibid.*)

While we agree with Elizabeth and Agency that principles of equal protection and due process require both a mother and a father to be able to establish and enjoy a conclusive presumption of parentage, we decline their invitation to apply a gender-neutral rule to part 2 of division 12, which provides the statutory framework for an unmarried father to establish paternity. If the Legislature had wanted to apply the same or similar mechanisms for conclusively determining parentage for both mothers and fathers, it would have done so. The Legislature " 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.' " (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].)

Further, the differential treatment between a child's mother and father is "inherent in a sensible statutory scheme, given the unique relationship of the mother to the event of birth." (*Nguyen, supra,* 533 U.S. at p. 64.) It is impracticable to apply the same rules governing voluntary declarations of paternity to establish maternity. Unlike paternity, maternity does not depend on the presence of the father at the child's birth. A father cannot execute a voluntary declaration of paternity without the concurrence of the natural mother, whose status has already been established by proof of her having given birth to the child.[9] (§ 7610, subd. (a), *Nguygen, supra,* at p. 64 [proof of motherhood is inherent in giving birth].)

---

[9] In addition, the existing framework for voluntary paternity declarations is not practicable in cases of artificial insemination, rape, incest or where the father's identity is unknown. If a voluntary *paternity* declaration under the existing statutory framework is the only means by which a mother could establish a conclusive presumption of maternity, how would a mother in those circumstances protect herself against a challenge to her status as her child's mother? Similarly, the argument that participating in a family law custody or visitation action confers a

■ Finally, and most importantly, applying statutes designed for establishing paternity to maternity would in effect create different classes of mothers subject to different treatment under the law. This runs counter to traditional assumptions about maternity that permeate many related areas of California law. (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 844 [4 Cal.Rptr.2d 615, 823 P.2d 1216] [it has long been recognized that the Legislature clearly intended "to provide natural fathers with far less rights than both mothers and presumed fathers under California's statutory system"]; see, e.g., Welf. & Inst. Code, § 361.5 [mandating reunification services to "the child's mother and statutorily presumed father," and permitting the provision of reunification services to the child's "biological father"].) A change of this magnitude should not be undertaken without a comprehensive analysis of its effect on other statutes, including the dependency framework. "Such important policy determinations, which will profoundly impact families, children and society, are best left to the Legislature." (*M.C., supra,* 195 Cal.App.4th at p. 214 [noting the "inadequacies of the antiquated UPA to accommodate rapidly changing familial structures"].) It is far beyond the reach of this record.

■ Moreover, where conditions of stability and security are missing from a child's life, the statutory framework provides for an action to declare the child free from the parental custody and control of either or both parents. (§ 7800 et seq.) This includes circumstances where one parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication, with the intent on the part of the parent to abandon the child. (§ 7822, subd. (a)(3); see § 9000 et seq. [stepparent adoption].) Section 7612 is not a substitute or shortcut for established procedures and substantive requirements that are required before a court may terminate parental rights.

This case does not concern surrogacy, a same-sex relationship, relinquishment by the mother for adoption or abandonment of the child by the mother at birth. Instead, it concerns children who were made the old-fashioned way, brought home and raised by their unmarried mother and father, then by their mother, and then by their father and stepmother.[10] This is not an unusual familial structure. Elizabeth's maternity was established by proof of having given birth to her children. (§ 7610, subd. (a); cf. *Johnson, supra,* 5 Cal.4th at p. 93.) The challenge to Elizabeth's maternity was not an appropriate action

conclusive presumption of maternity to the mother involved in the action does not encompass the circumstances of a mother who is not involved in such an action.

[10] At oral argument, Agency acknowledged that Crystal meets the statutory definition of a relative entitled to preferential consideration for the children's placement. (Welf. & Inst. Code, § 361.3, subd. (c)(2) [" '[r]elative' means an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship, including stepparents . . ."].)

under section 7612, subdivision (a).[11] The juvenile court erred when it denied Elizabeth's petition to vacate its finding that Crystal was the children's presumed mother under section 7611, subdivision (d).

## DISPOSITION

The order denying Elizabeth's Welfare and Institutions Code section 388 petition is reversed. The finding that Crystal is the children's presumed mother is vacated.

Nares, Acting P. J., and Irion, J., concurred.

---

[11] Because we conclude that Elizabeth's maternity status was not subject to a rebuttable presumption of maternity, we need not address the parties' arguments whether the juvenile court's finding impermissibly left the children with three legal parents and whether the juvenile court properly resolved the competing maternity claims under section 7612, subdivision (b).