[No. B151911. Second Dist., Div. Two. Sept. 3, 2002.]

In re KAREN C., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
LETICIA C., Defendant;
KAREN C., Movant and Appellant.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Movant and Appellant.

Lloyd W. Pellman, County Counsel, and Lois D. Timnick, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Karen C., a 12-year-old child, appeals from an order of the juvenile court denying her petition for an order determining the existence of a mother and child relationship between Leticia C. and her. Though Leticia joined in the petition, she is not a party to this appeal.

We will vacate the order and remand the matter to the juvenile court for further hearing and consideration in light of a recent decision of the Supreme Court of California, *In re Nicholas H.* (2002) 28 Cal.4th 56 [120 Cal.Rptr.2d 146, 46 P.3d 932] (*Nicholas H.*). As will be discussed, that case involved a presumed father. We hold that under the facts of the present matter, the decision reached in *Nicholas H.* applies with equal force to a woman, as a presumed mother.

I.

The record of the proceedings below tended to show the facts stated in the following four paragraphs.

Karen was an unwanted child of Alicia and Jose P., a married couple. Through an intermediary who had unsuccessfully attempted an untherapeutic third-trimester abortion on Alicia, Alicia gave Karen to Leticia promptly after Karen was born in the Los Angeles County General Hospital in 1989. Alicia told the hospital staff her own name was Leticia C., so that Leticia would be named on Karen's birth certificate as Karen's birth mother. Leticia raised Karen as her own child. Leticia told Karen that Karen was adopted. Karen had no contact with her natural parents; to her, Leticia was the only "parent" she ever had. The sole source of the information in this paragraph was Leticia.[1]

When Karen was 10 years old, the preceding facts came to the attention of the DCFS, after Leticia, who was an alcoholic and suffered from clinical depression, beat Karen. Leticia herself called the authorities, expressing fear that she might seriously harm the child. Karen was declared a dependent of the juvenile court on October 4, 2000. The juvenile court placed her in foster care and ordered that Leticia be provided with reunification services.

The juvenile court ordered Leticia to participate in parenting classes, individual counseling, alcoholism treatment, alcohol abuse counseling, and

---

[1]Inasmuch as Leticia suffers from alcoholism and depression, has attempted suicide several times, is listed on the birth certificate as the mother, and has been the only person to raise Karen, we confess surprise that the trial court and the Los Angeles County Department of Children and Family Services (DCFS) would so readily accept Leticia's word at face value. There is absolutely no corroborating evidence in the record to show that Leticia is not in fact Karen's birth mother.

to take her prescribed depression medication. Her performance fell short of what the juvenile court required. Leticia applied to the appropriate agency for a license to serve as a foster parent, but the agency denied the application. Leticia did not attempt to persuade DCFS that it ought to let her adopt Karen.

Neither Karen nor Leticia has had any contact with Alicia and Jose, who Leticia believes reside in Guatemala.

Karen requested that the juvenile court decree the existence of a mother-daughter relationship between her and Leticia, who joined in the motion. The juvenile court denied the request. The juvenile court reasoned, in part, that the law does not provide that a woman who is neither a child's birth mother nor a child's genetic mother may be the child's mother. This appeal followed.

## II.

Karen contends: (1) The Family Code sections concerning the father and child relationship may also be applied to determine the mother and child relationship; (2) Karen has standing to bring an action to determine the existence of her mother and child relationship with Leticia; (3) Leticia is Karen's legal, "presumed" mother; (4) Leticia must be granted status as Karen's legal mother based on public policy and logic pursuant to Family Code section 7612, subdivision (b);[2] and (5) Karen was denied equal protection of the laws because the juvenile court would have applied the law differently had Leticia been a man, and because the relevant statutes, as interpreted by the juvenile court, are unconstitutional as applied.

DCFS contends: (1) The appeal should be dismissed as moot, because the question of whether Leticia is a presumed mother, a biological mother, a psychological mother, or a de facto mother is irrelevant, since the juvenile court is not going to place Karen with Leticia in any event; (2) Leticia does not qualify as a "presumed mother"; (3) Leticia should not be permitted to benefit from her unclean hands; and (4) Karen was not denied equal protection of the laws, because (a) the juvenile court did not decide the matter any differently than if Leticia had been a man, and (b) men and women are not similarly situated when parenthood is in dispute, since only women give birth to children.

## III.

Karen's preliminary contentions are correct. Karen has standing to bring an action to determine the existence of a mother-child relationship

---

[2]All further statutory references herein are to the Family Code.

between Leticia and her, because any "interested person" can bring such an action. (§ 7650.) Under the trial court's current order, Karen has effectively been made an orphan. She therefore has an obvious interest in a legal determination of whether Leticia is her mother.

Next, the appeal is not moot. The existence of a parent-child relationship is different from the question of placement, so the fact that the juvenile court has not placed Karen with Leticia, and appears unlikely to do so in the future, does not prevent the maternity question from being considered an actual and ongoing dispute.

Finally, Karen's claim is not defeated by Leticia's unclean hands, because the record on appeal contains no evidence that Karen participated in or ratified any of Leticia's wrongful or harmful acts.

## IV.

█ The pertinent statute is the California Uniform Parentage Act (the Act), section 7600 et seq. Similar to its predecessor, the Uniform Paternity Act, the Act concentrates on questions of paternity rather than maternity. The focus on paternity is likely due to the fact the identity of a child's birth mother is rarely in dispute.

Section 7610 provides that there are three ways to determine parentage: "(a) Between a child and the natural mother, it may be established by proof of her having given birth to the child, or under this part. [¶] (b) Between a child and the natural father, it may be established under this part. [¶] (c) Between a child and an adoptive parent, it may be established by proof of adoption."

Section 7611 sets forth rebuttable presumptions of paternity. Most of these presumptions flow from various forms of marriage or attempted marriage to the child's mother, and are based, no doubt, on the public interest in marital stability and legitimacy of children. But a different presumption—the one that is pertinent here—is provided in section 7611: A man is presumed to be the natural father of a child if "(d) He receives the child into his home and openly holds out the child as his natural child."[3]

Section 7612 deals with the rebuttal of the section 7611 presumption of paternity. A court judgment establishing the paternity of a different man

---

[3]Section 7611 provides, in pertinent part: "A man is presumed to be the natural father of a child if he meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions:

"(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death,

rebuts the section 7611 presumption. In the absence of such a judgment, any presumption arising under section 7611 "is a rebuttable presumption affecting the burden of proof and may be rebutted *in an appropriate action* only by clear and convincing evidence." (§ 7612, subd. (a), italics added.)

If the section 7611 presumptions point to two men (e.g., if one man is married to the child's mother, but another man receives the child into his home and openly holds out the child as his natural child), the conflict is resolved in favor of that presumption which "on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).)

Importantly, "Any interested person may bring an action to determine the existence or nonexistence of a mother and child relationship." (§ 7650.) The second sentence of section 7650 provides that the paternity statutes are also applicable to the mother-child relationship "[i]nsofar as practicable."

## V.

The judicial determination of paternity is thus a mixture of a search for genetic truth and the implementation of the strong public policies favoring marriage and family stability, and disfavoring labels of illegitimacy. A judgment establishing paternity can, therefore, be a decretal fiction.

The effect of the section 7611 presumptions of paternity is that in certain cases, a man known not to be the child's genetic father is decreed to be the de jure father.[4] Any doubt about this premise was dispelled by the decision in *Nicholas H., supra,* 28 Cal.4th 56. There, the man seeking to establish paternity conceded that he was not the genetic father. He did not meet the child's mother until three months before the child was born, but received the

---

annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court.

"(b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] . . . [¶]

"(c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] . . . [¶]

"(d) He receives the child into his home and openly holds out the child as his natural child.

"(e) If the child was born and resides in a nation with which the United States engages in an Orderly Departure Program or successor program, he acknowledges that he is the child's father in a declaration under penalty of perjury . . . ."

[4]Previous published cases declaring the paternity of men known not to be fathers are discussed in *Nicholas H.,* and we see no need to repeat that survey here.

child into his home and openly raised Nicholas as his natural child.[5] The trial court held that under those facts, the case "was not an appropriate action" to rebut the section 7611, subdivision (d), presumption of fatherhood. The Court of Appeal reversed, reasoning that the presumption of paternity had been rebutted by clear and convincing evidence, namely, the undisputed evidence establishing as an objective fact that the man was not the child's genetic father. Our Supreme Court reversed the appellate court, holding that clear and convincing evidence of nonpaternity does not always overcome the presumption of paternity; rather, it overcomes it only "in an appropriate action." (*Nicholas H.*, at pp. 59, 63, 70.) The quoted phrase appears in the statute, and the phrase has no meaning unless it can mean that in a case where it is "inappropriate" to deny a judgment decreeing the paternity of a man known not to be the father, the presumption is unrebutted, and the decree should issue. (*Id.* at p. 70.)

Further, one of the key holdings of *Nicholas H.* is "that a man does not lose his status as a presumed father by admitting he is not the biological father." (*Nicholas H., supra*, 28 Cal.4th at p. 63.)

### VI.

The foregoing principles should apply equally to women. (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 89 [19 Cal.Rptr.2d 494, 851 P.2d 776]; § 7650.) It then follows that here, where no one nominated the birth mother as a candidate for a declaration of maternity, the fact that Leticia was assumed not to be the birth mother "by clear and convincing evidence" consisting of her own admission against interest, does not necessarily rebut the presumption of maternity flowing from her taking Karen into her home and raising her as her own child. Rather, a determination must be made whether this is "an appropriate action" to rule that the presumption has been rebutted by clear and convincing evidence.

In the present appeal, we cannot be certain, from the record of the juvenile court proceedings, whether the juvenile court would have found this particular case "an appropriate action" in which to find the presumption that Leticia was the natural mother of Karen was rebutted by the proof that she was not. The juvenile court did not apply the tests or the analyses enunciated in the *Nicholas H.* decision, of course, because that decision had not yet been handed down.

We have decided to remand the matter to the juvenile court for a fresh determination, after taking additional evidence, in light of the *Nicholas H.*

---

[5]It should be noted that *Nicholas H.* did not involve competing paternity claims of a man known to be the father and another man known not to be the father. The nonfather was the only identified candidate for a paternity declaration.

decision. Four factors support our decision to prescribe this procedure. First, such a hearing will not unduly burden the juvenile court, because it must continue to hold periodic review hearings in the dependency case, at which all interested parties are permitted to appear. Second, such a hearing will enable all parties to present for the first time evidence of anything that has transpired after the juvenile court first denied Leticia's request in November 2000. Third, such a hearing will assure that the dispute is squarely adjudicated under the principles enunciated in the *Nicholas H.* decision as well as under any other applicable rules of law. Fourth, at such a hearing, if requested by any party, the juvenile court will also, under the same statute (§ 7650), have an opportunity to adjudicate the *non*existence of a mother and child relationship of Leticia and Karen.

## VII.

For the guidance of the parties, we will address certain of their contentions on appeal.

Karen's equal protection argument is moot, because we have decided to vacate the appealed order, and remand the matter for reconsideration under the *Nicholas H.* decision. (*Nicholas H., supra,* 28 Cal.4th 56.) We do not assume that the juvenile court would have granted Karen's petition to establish the parent-child relationship had Leticia been a man with no genetic tie to Karen. Such assumption is unfounded in the record. The presumption arising under section 7611, subdivision (d), must be applied equally to men and to women, as must the rule that this presumption may be rebutted *in an appropriate action* by clear and convincing evidence of nonparenthood. (§ 7650.)

DCFS argues that the presumption of section 7611, subdivision (d), does not apply to women because the statutory presumption was intended to erase the stigma of illegitimacy that could arise before the era of precise genetic testing. That argument is incorrect. Section 7611, read in conjunction with section 7650, means that a woman is presumed to be the natural mother of a child if she receives the child into her home and openly holds out the child as her natural child, unless this reading is not practicable. It is practicable. Evidence (other than blood testing) to rebut the statutory presumption of natural parenthood is usually more readily available and more probative in the case of women, who are always present with the child at the moment of the child's birth, than in the case of men, who often are not and whose presence does not prove parenthood in any event. However, this does not mean that it is "impracticable" to apply the presumption equally to women; rather, it merely means that the presumption, when applied, is usually easier to rebut by clear and convincing evidence in the case of a woman.

Here, if the juvenile court credits Leticia's uncontradicted testimony on the point, Leticia received Karen into her home and openly held Karen out as her natural child. It follows that Karen enjoys the presumption of section 7611, subdivision (d), that Leticia is Karen's natural parent, unless and until the presumption is rebutted. If the juvenile court credits Leticia's uncontradicted testimony on another point and finds it clear and convincing, Leticia is not Karen's natural parent, unless the proceeding was not "an appropriate action," within the meaning of section 7612, subdivision (a), and the *Nicholas H.* decision. This is a question we will leave for the juvenile court to determine in the first instance, on remand.

Karen's arguments based on public policy and logic are thus subsumed in the question the juvenile court must decide on remand.

Karen also contends that competing presumptions are present, between section 7610, subdivision (a) (under which Alicia is the mother, because she gave birth to Karen), and section 7611, subdivision (d) (under which Leticia is presumed to be the mother because she took Karen into her home). We do not read the "conflicting presumptions" provision of section 7612, subdivision (b), so casually. That statute refers to two or more conflicting presumptions that "arise under section 7611." Section 7610 does not establish any presumptions, and the rules that it establishes arise under section 7610, not section 7611.

When there is a conflict between presumptions arising under section 7611, then "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) Here, the presumptions under section 7611, subdivisions (a) through (c) and (e), do not conflict with the presumption of subdivision (d). Leticia never married or attempted to marry Karen's father, nor was Karen born outside the United States.

## VIII.

At the hearing on remand, Leticia is entitled to be represented by counsel if she chooses. We express no view, however, on whether she is entitled to be represented by counsel paid by the public. Nor do we express any view on whether she is entitled to other future services, at public expense, of the type the juvenile court has ordered in the past, or whether her or Karen's motivation involves a desire to establish the legal parenthood that may be a prerequisite to eligibility to receive social welfare benefits. These questions are not presented on the present appeal.

Nor do we express an opinion on whether an undocumented de facto "adoption" of the type effectuated here at the time of Karen's birth can be

condoned by the courts in the face of the principles that adoption requires an expeditiously sought court decree; that parents cannot give their children away; that parents cannot commit their children into involuntary servitude to others; that the courts should not freely devise and recognize a form of de jure adoption not authorized by the Legislature; and that prescriptive rights should not ripen in favor of those who choose to turn their backs on all required legal formalities in favor of a private form of undocumented adoption. These and other public policy considerations are all subsumed under the rubric of what is "an appropriate action," and will be decided in this case by the juvenile court in the first instance.

The order of the juvenile court denying appellant's petition for an order decreeing the existence of a mother and child relationship is vacated, and the matter is remanded for further proceedings.

Boren, P. J., and Doi Todd, J., concurred.