[No. B182101. Second Dist., Div. Three. Aug. 17, 2006.]

AMY G., Plaintiff and Appellant, v.
M.W., Defendant and Respondent;
G.G., Defendant and Appellant.

[No. B187828. Second Dist., Div. Three. Aug. 17, 2006.]

G.G., Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
M.W., Real Party in Interest.

4

COUNSEL

Goodman & Metz and Diane M. Goodman for Plaintiff and Appellant Amy G.

Leslie Ellen Shear; and Robert J. Friedman for Defendant and Appellant and for Petitioner G.G.

No appearance for Respondent Superior Court.

Law Office of Levin & Margolin, Lionel P. Levin; Barbakow & Ribet and Claudia Ribet for Defendant and Respondent and for Real Party in Interest M.W.

OPINION

KLEIN, P. J.—

## INTRODUCTION

M.W. (hereafter Kim) and G.G. (father) are the biological parents of three-year-old Nathan. Father and his wife, Amy, have raised Nathan in their home since he was one month old.

In an action brought by Kim for custody and visitation rights to her biological child, the trial court denied father's motion to join Amy as a party. Father filed a petition for writ of prohibition to vacate the court's order and to join Amy in the action.

Amy also brought a separate action against Kim and father, to be declared Nathan's presumed mother; the trial court granted Kim's motion to quash and dismissed that action. Amy and father appealed that order.

In this consolidated petition and appeal, father and Amy argue that Amy is Nathan's presumed mother, and therefore the trial court erred in denying Amy joinder or standing. Father and Amy's arguments present the question of whether the statutory presumptions of paternity contained in the Family Code enable the wife of a man who fathered a child in an extramarital relationship to assert status as the child's mother, when the child's biological mother has come forward promptly to assert her maternal rights.

We answer no, and affirm. We uphold the trial court's denial of father's motion to join Amy and its order granting Kim's motion to quash Amy's independent action.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

Father is married to Amy. During his marriage to Amy, he had an extramarital relationship with Kim, the real party in interest. That relationship resulted in a child, Nathan.

During her relationship with father, Kim was married to Steven, but they were separated at the time of Nathan's conception and birth.

Nathan is Kim's only child. Father and Amy have two daughters.

The parties disagree as to their intent and as to the circumstances of Nathan's conception and birth. Father asserts Kim offered to bear a child who would be raised as a child of his marriage to Amy. Kim contends her relationship with father was romantic, the pregnancy was unplanned, and that she expected they would raise Nathan jointly.

Kim concealed her pregnancy from business associates, acquaintances, family and friends and left California for Virginia, where she gave birth to Nathan. Kim cared for Nathan during his first month in Virginia.

In June 2003, when Nathan was one month old, father came to Virginia to take him to California. Father met with Kim in a hotel lobby. He presented Kim with an "agreement regarding custody and adoption" (the Agreement), drafted by a Maryland law firm he had retained.

The Agreement provided: Father would have sole custody over Nathan; Kim would have no visitation; and Kim consented to a stepparent adoption by Amy. The Agreement also contained recitals to the effect that Kim acknowledged and was aware of her right to obtain independent counsel,

father's counsel had not provided her with any legal advice in connection with the Agreement, she was executing the Agreement freely and voluntarily, and the Agreement was not the product of any fraud, duress or undue influence. Kim and father signed the Agreement while sitting in father's limousine.[1]

Kim did not have a lawyer when she signed the document. She contends she did not understand what she was signing and felt pressured to do so.

After signing the Agreement, they returned to the hotel lobby where father picked up Nathan. Kim handed father all of Nathan's clothes, formula, diapers and toys. That evening, father flew with Nathan back to Los Angeles.

Since June 29, 2003, Nathan has lived continuously with father and his family and has never been alone with Kim.

### 2. *Proceedings.*

On September 29, 2003, Kim filed a petition against father to establish parental relationship, seeking child support, custody and visitation. Thereafter, Kim brought an order to show cause. Kim did not serve the papers until November 11, 2003.

Father responded, requesting the court to deny Kim the relief she requested and to enter a judgment of parentage recognizing Amy as the mother.

### a. *Father's initial motion for joinder of Amy as a necessary party.*

On December 18, 2003, at a hearing on Kim's order to show cause, father argued that Amy was a necessary party and Kim's custody request could not be heard without Amy's joinder. The trial court denied father's request for joinder, ruling, inter alia, Amy "is completely aligned" with father and therefore her interests were adequately protected.

In a supplemental memorandum of points and authorities, father unsuccessfully argued, inter alia, Amy was the presumed natural mother of Nathan pursuant to Family Code section 7611, subdivision (d) "because she has taken him into her home, held him out as her son, and played all the social, psychological and economic roles of mother since he was one month old . . . ."[2]

---

[1] Amy did not pursue a stepparent adoption of Nathan.

[2] All further statutory references are to the Family Code, unless otherwise indicated.

### b. *Amy's independent action to establish parental relationship.*

On January 26, 2004, after father failed in his attempt to join Amy in Kim's action, Amy filed a separate action, naming Kim and father, to establish her status as Nathan's mother. Amy brought the action pursuant to section 7650, which provides in relevant part: "Any interested person may bring an action to determine the existence or nonexistence of a mother and child relationship." (§ 7650, subd. (a).)

On June 23, 2004, the trial court granted Kim's motion to quash, ruling that Amy was not an interested person within the meaning of section 7650 because she was not biologically related to the child with whom she sought to establish a parental relationship.

Thereafter, the trial court granted reconsideration, again granted the motion to quash, and dismissed Amy's action with prejudice.

On March 24, 2005, Amy and father filed a timely notice of appeal from the order of dismissal.

### c. *Proceedings in Kim's action; trial court again denies joinder of Amy.*

Turning our focus back to Kim's action, on February 9, 2004, the trial court ordered that Kim have monitored visitation with Nathan for four hours per week.

On March 12, 2004, the parties stipulated to the appointment of Dr. Jeffrey Lulow to conduct a child custody evaluation.

On August 15, 2005, father filed a written motion for joinder of Amy as well as Steven. With respect to the facts showing that Amy was either indispensable or a necessary party, the motion denied Kim's parentage and contended: Amy is Nathan's mother, Amy "has exercised actual custody of Nathan and asserted custody rights since Nathan was less than a month old," and a complete and effective judgment could not be had without joining Amy as a party.

Father also sought to join Steven, Kim's husband at the time of the child's conception and birth, in order to establish father's paternity with finality.

Father argued joinder was mandatory and complete relief could not be had without joining Amy and Steven as parties.

On August 30, 2005, nearly 18 months after the March 12, 2004 order appointing Dr. Lulow, he completed his evaluation.

On September 15, 2005, Steven filed a responsive declaration stating he was making no claim to parentage of Nathan, that he was willing to appear in the action solely for the purpose of entering into a binding waiver of a claim to parentage, and that he did not wish to be otherwise joined as a party to the litigation.

By way of opposition to the joinder motion, Kim argued Amy was merely a stepparent and she had no standing to allege maternity.

On October 21, 2005, the matter came on for hearing. The trial court refused to take judicial notice of the child custody evaluation for purposes of the joinder motion and stated it had not read the report. The trial court denied father's motion for joinder of Amy and Steven.[3]

The reporter's transcript of the hearing on the joinder motion sets forth the trial court's reasoning herein. The trial court repeatedly asked, "How is Amy . . . any different from a live-in nanny?"[4] The trial court also commented, "[Amy] doesn't have custody rights. [Father] has custody rights. And she happens to live with [father]."

    d. *Subsequent proceedings.*

On December 19, 2005, father filed the instant petition for writ of prohibition or other appropriate relief, seeking to preclude the trial court from conducting a trial in this matter without first joining Amy and Steven as parties.

This court issued an order to show cause, stayed proceedings in the trial court, granted a motion to expedite the appeal, and consolidated the appeal and the writ petition for hearing before this court.

## CONTENTIONS

In the writ petition and appeal, Amy and father contend the trial court erred in denying father's motion to join Amy and in granting Kim's motion to quash Amy's independent action. We summarize their contentions as follows:

---

[3] This court has reviewed Dr. Lulow's report, which discusses, inter alia, the bond between Amy and Nathan. The contents of the report do not affect our legal interpretation with respect to the application of the parentage statutes.

[4] Although we affirm the trial court's decision, we find this comment, comparing Amy to a domestic employee, unfortunate.

1. Amy must be joined in the action pursuant to Code of Civil Procedure section 389, subdivision (a), and family law rules, California Rules of Court, rule 5.158(a);[5]

2. Amy is an "interested person" under section 7650, subdivision (a), and therefore has standing to maintain her independent action to establish a mother-child relationship;

3. Section 7650, subdivision (a), mandates gender-neutral application of the presumed father statutes;

4. Amy is Nathan's presumed mother under sections 7611, subdivisions (a) and (d), and 7540;

5. Any interpretation of the relevant Family Code provisions to deny Amy joinder or standing violates equal protection and due process; and

6. Amy has standing to assert equitable estoppel.

Father additionally contends the trial court erred in failing to join Steven.

We reject all of their contentions. We find no error in the trial court's denial of father's motion to join Amy, and therefore deny father's petition for writ of prohibition. We also affirm the trial court's grant of Kim's motion to quash Amy's independent action.

## DISCUSSION

### 1. *Standard of review*

The essential facts, including Kim's status as Nathan's biological mother, father's biological paternity, and Amy's status as father's spouse, are undisputed. Therefore, the essential issue presented is whether Amy is entitled to joinder or standing pursuant to provisions found in either the Code of Civil Procedure or the Family Code. "Statutory interpretation is a question of law, which appellate courts review de novo. [Citations.]" (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [28 Cal.Rptr.3d 188].)

### 2. *Overview of arguments: pertinent joinder and standing provisions invoked by father and Amy.*

#### a. *Compulsory joinder: Code of Civil Procedure section 389, subdivision (a).*

Generally, a person "shall be joined as a party in the action if . . . [she] claims an interest relating to the subject of the action and is so situated

---

[5] All further rule references are to the California Rules of Court, family law rules.

that the disposition of the action in [her] absence may . . . as a practical matter impair or impede [her] ability to protect that interest . . . ." (Code Civ. Proc., § 389, subd. (a).)

█ *County of Los Angeles v. Sheldon P.* (2002) 102 Cal.App.4th 1337 [126 Cal.Rptr.2d 350] held a person who meets the criteria of Code of Civil Procedure section 389, subdivision (a), must be joined even if the person to be joined has little chance of prevailing on the merits. In that case, the child's biological father requested another man be joined who was not the child's biological father and who had no social relationship with the child, but who had signed a voluntary declaration of paternity at the time the child was born. (*Sheldon P.*, *supra*, at pp. 1342–1344.) Because the voluntary declaration of paternity gave the other man status as a presumed father and entitled him to certain rights, and that person's absence from the action could impair that person's interest, joinder was required. (*Id.* at pp. 1344–1345.)

Father contends that, like the voluntary declarant in *Sheldon P.* who had a claim to be the child's father, Amy has a claim to be Nathan's mother. Therefore, Amy's joinder is mandatory pursuant to Code of Civil Procedure section 389, subdivision (a), because her absence in this action will impede or impair her ability to protect this interest.

b. *Joinder under section 7635, subdivision (b).*

Section 7635, subdivision (b), sets forth persons who may be made parties to a *parentage* action. "The natural mother, each man presumed to be the father under Section 7611, and each man alleged to be the natural father, may be made parties and shall be given notice of the action . . . and an opportunity to be heard." (§ 7635, subd. (b).)

█ Generally, the rules set forth in the Uniform Parentage Act (UPA) (§ 7600 et seq.) pertaining to paternity actions apply equally to maternity actions under section 7650, subdivision (a).[6] Father argues we read section 7635, subdivision (b), in a gender-neutral manner, thus *requiring*[7] Amy's joinder. (§§ 7650, subd. (a), 7635, subd. (b).)

---

[6] Section 7650, subdivision (a) reads in full, "Any interested person may bring an action to determine the existence or nonexistence of a mother and child relationship. Insofar as practicable, the provisions of this part [the UPA] applicable to the father and child relationship apply."

[7] The language "may be made parties" in section 7635, subdivision (b), suggests this section is a permissive joinder rule, not a mandatory joinder rule. However, because we find Amy cannot be Nathan's presumed mother under section 7611 or Nathan's natural mother, we need not decide whether the trial court erred in refusing to grant Amy permissive joinder in the action.

c. *Joinder under rule 5.158(a).*

Rule 5.158(a) provides: "The court must order joined as a party to the proceeding any person the court discovers has physical custody or claims custody or visitation rights *with respect to any minor child of the marriage.*" (Italics added.) Father and Amy do not dispute Nathan's birth arose from an extramarital affair between father and Kim, and not from the marital relationship between father and Amy. Father and Amy do not claim to have adopted Nathan. Rather, they argue, through a gender-neutral application of the Family Code, Nathan is *presumed* to be a child of the marriage because Amy was married to and cohabiting with father when Nathan was born. (§ 7540.) Because Amy claims custody over Nathan, and Amy and father argue Nathan is a presumed child of the marriage, father contends Amy must be made a party to the action.

d. *Standing to bring maternity action under section 7650, subdivision (a).*

Section 7650, subdivision (a) allows any "interested person" standing to bring a maternity action. Father and Amy argue Amy is an "interested person" because she claims to be Nathan's mother, and therefore the trial court erred in granting Kim's motion to quash Amy's independent action.

Having set forth father and Amy's theories, we now turn to the merits.

3. *Father and Amy's arguments are unavailing because Amy cannot be deemed to be Nathan's mother.*

As outlined above, father and Amy's arguments all are predicated on Amy's claim she is Nathan's mother. Therefore, our threshold question is whether Amy can assert status as Nathan's mother in view of the undisputed fact that Kim, a party to both actions, is Nathan's biological mother.

Amy and father advance several arguments as to why Amy can allege status as Nathan's mother. Amy and father allege Amy is Nathan's presumed mother under section 7611, subdivisions (a) and (d). They further allege Amy is conclusively presumed to be Nathan's mother under section 7540. They also take the position Amy is Nathan's natural mother within the meaning of section 7635, subdivision (b). Based on any and all of these claims, Amy and father argue Amy is entitled either to joinder in Kim's action or to standing to bring an independent maternity action. As explained, none of these theories has merit.

### a. *Amy cannot establish status as Nathan's presumed mother under section 7611, subdivisions (a) and (d).*

Section 7611 sets forth various circumstances wherein the court will presume a man to be a child's father. "A man is presumed to be the natural father of the child if . . . [¶] (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage . . . ." (§ 7611, subd. (a).) A man is also presumed to be the natural father of the child if "[h]e receives the child into his home and openly holds out the child as his natural child." (§ 7611, subd. (d).)

The UPA specifically provides *maternity* may be established "by proof of her having given birth to the child, *or under this part* [i.e., the UPA, § 7600 et seq.]." (§ 7610, subd. (a), italics added.)[8] The UPA also provides, as discussed above, the rules pertaining to paternity actions apply equally to maternity actions. (§ 7650, subd. (a).) Therefore, the question presented is the applicability of section 7611, pertaining to presumed fathers, to Amy.

In general, California law only recognizes one mother. (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 92, fn. 8 [19 Cal.Rptr.2d 494, 851 P.2d 776].) Amy and father do not dispute that Kim gave birth to Nathan, making Kim the natural mother under section 7610, subdivision (a). However, because section 7610, subdivision (a), provides maternity may be established "by proof of her having given birth to the child, *or under this part* [i.e., the UPA]" (§ 7610, subd. (a), italics added), Amy and father assert Amy's maternity based on the presumed father provisions of section 7611, subdivisions (a) and (d), which they seek to apply in a gender-neutral manner. Amy and father argue Amy is Nathan's presumed mother under section 7611, subdivision (a), by virtue of her marriage to father, and under section 7611, subdivision (d), because she received Nathan into her home and held him out as her own child. Neither the case law nor the statutory framework supports this argument.

In limited circumstances, the presumptions of paternity listed in section 7611 have been interpreted to apply to women. (See, e.g., *In re Karen C.* (2002) 101 Cal.App.4th 932, 937–938 [124 Cal.Rptr.2d 677]; *In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1357–1358 [4 Cal.Rptr.3d 705]; *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 119–120, 125 [33 Cal.Rptr.3d 46, 117 P.3d 660].)

In *Karen C.*, the birth mother gave her child to another woman when the child was born and subsequently absented herself. (*In re Karen C., supra*, 101

---

[8] In contrast, the father and child relationship may be established simply "under this part." (§ 7610, subd. (b).)

Cal.App.4th at p. 934.) The other woman, who took the child into her home and raised the child as her own, was presumed to be the child's mother under section 7611, subdivision (d). (*Karen C.*, at p. 938.) Similarly, in *Salvador M.*, where the birth mother was deceased, the child's adult half sister who raised the child since his mother's death was presumed to be his mother under section 7611, subdivision (d). (*In re Salvador M., supra*, 111 Cal.App.4th at pp. 1355–1358.) Thus, in both *Karen C.* and *Salvador M.*, the birth mother was absent and there was no competing claim to maternity.

*Elisa B.* applied section 7611, subdivision (d), to declare a woman, Elisa, a presumed mother of the twin children born to her same-sex partner, Emily. (*Elisa B. v. Superior Court, supra*, 37 Cal.4th at pp. 113–114, 125.) After the relationship ended, a county district attorney sued Elisa for child support on behalf of the twins. (*Id.* at pp. 113, 115.) Elisa had actively participated in causing the children to be conceived with the understanding that she would raise the children as her own together with Emily. Once the children were born, Elisa received them into her home and openly held them out as her own. (*Id.* at pp. 113, 125.) Given these circumstances, the court declared Elisa a presumed mother under section 7611, subdivision (d), perceiving "no reason" why both parents of a child cannot be women. (*Elisa B. v. Superior Court, supra*, at pp. 119, 125.) In reaching this conclusion, the court specifically noted there were "*no competing claims to her being the children's second parent.*" (*Id.* at p. 125, italics added.)

Father and Amy rely on *Elisa B.* for the proposition that section 7611 should apply in maternity cases even where the child's birth mother is present and asserts legal parenthood. However, *Elisa B.* is distinguishable. Here, Nathan's natural father is known and present in the action. Nathan can have only one additional parent. Both father and Amy concede that Kim is Nathan's biological mother. By alleging presumed maternity, Amy advances a competing claim to be Nathan's second parent. Because the absence of a competing claim to be the second parent specifically drove the *Elisa B.* court's decision, *Elisa B.* cannot control this case.

The cases cited by Amy and father where the courts applied the presumed father statute, section 7611, to recognize a presumed mother all involved circumstances where there was *no competing claim* to be the child's mother or second parent. (*Elisa B. v. Superior Court, supra*, 37 Cal.4th at p. 125; *In re Karen C., supra*, 101 Cal.App.4th at p. 938; *In re Salvador M., supra*, 111 Cal.App.4th at p. 1359.) Here, unlike those cases, both the child's biological father and biological mother have identified themselves and come forward to assert their legal parentage. Under these circumstances, it is not appropriate to invoke a gender-neutral reading of the paternity presumptions to provide Nathan with another mother. To allow Amy an opportunity to be declared

Nathan's mother through a gender-neutral reading of the UPA would arrive at an impracticable result. (§ 7650, subd. (a).)

    b.  Jesusa V. *is unavailing to father and Amy.*

Moreover, the UPA framework does not support Amy's joinder or standing as an alleged presumed mother under section 7611 because the statutory scheme provides no mechanism to resolve her and Kim's competing maternity claims. Amy and father argue section 7612, subdivision (b), would direct the trial court to weigh evidence pertaining to "policy and logic" to determine whether Amy or Kim would prevail as Nathan's legal mother.[9] (§ 7612, subd. (b).)

In support of their theory, father and Amy cite *In re Jesusa V.* (2004) 32 Cal.4th 588 [10 Cal.Rptr.3d 205, 85 P.3d 2]. In that case, section 7612, subdivision (b), was utilized to resolve competing paternity claims between the child's biological father, who qualified under section 7611, subdivision (d), and the mother's husband, who qualified under section 7611, subdivisions (a) and (d). (*In re Jesusa V., supra,* 32 Cal.4th at pp. 603–607; see also *Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 53 [22 Cal.Rptr.3d 606] [applying *Jesusa V.* to competing claims of paternity].)

Father and Amy's argument fails because, unlike *Jesusa V.,* this case does not present a conflict between two persons presumed to be a child's parent under section 7611. Kim is not Nathan's presumed mother under section 7611; rather her maternity is established under section 7610, subdivision (a), based on her having given birth to Nathan.

    Section 7612, subdivision (b), specifically applies to "two or more presumptions aris[ing] under Section 7611," such as was the case in *Jesusa V.* (§ 7612, subd. (b); *In re Jesusa V., supra,* 32 Cal.4th at pp. 603, 607.) Accordingly, section 7612, subdivision (b), does not apply where a presumed maternity claim arising under a gender-neutral reading of section 7611 conflicts with a maternity claim pursuant to section 7610, subdivision (a). No mechanism exists in other provisions of the UPA to resolve such a conflict. Therefore, we do not find the UPA framework allows Amy an opportunity to assert status as Nathan's presumed mother where Kim, Nathan's biological mother, has come forward promptly to assert her maternal rights.

---

[9] Section 7612, subdivision (b), reads in full: "If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

c. *Amy is not Nathan's presumed mother under section 7540.*

Father and Amy alternatively contend Amy is conclusively presumed to be Nathan's mother under section 7540, which provides, "*Except as provided in Section 7541*, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." (§ 7540, italics added.) According to father and Amy, because section 7650, subdivision (a), mandates application of paternity rules to maternity actions, Nathan is conclusively presumed to be a child of father and Amy's marriage under section 7540.

Their argument is without merit. In their interpretation of section 7540, Amy and father overlook the statute's qualifying phrase "*Except as provided in Section 7541 . . . .*" (§ 7540, italics added.) Section 7541, subdivision (a), overrides the presumption of paternity under section 7540 if blood tests reveal that the biological mother's husband is not the father of the child.[10] Assuming, arguendo, that we apply a gender-neutral reading of section 7540, we must also apply a gender-neutral reading of section 7541, which would negate a wife's conclusive presumption of maternity when blood tests reveal she is not the mother of the child.

Here, no blood tests are required. It is undisputed that Kim, not Amy, is Nathan's biological mother. Accordingly, Amy cannot enjoy a conclusive presumption of maternity under section 7540.

d. *Amy cannot assert status as Nathan's natural mother.*

We also reject Amy and father's additional suggestion that Amy is Nathan's natural mother, and therefore can be joined pursuant to section 7635, subdivision (b). While the word "natural" is not always interpreted as synonymous with "biological" (see, e.g., *In re Nicholas H.* (2002) 28 Cal.4th 56, 64 [120 Cal.Rptr.2d 146, 46 P.3d 932]), the language of section 7635, subdivision (b), expressly refers to the "natural mother" and also differentiates between "each man *presumed* to be the father under Section 7611, and each man alleged to be the *natural* father . . . ." (§ 7635, subd. (b), italics added.) Because the statutory language provides this distinction, we interpret "natural mother" here to refer to the biological mother. Thus, Amy cannot be deemed to be Nathan's natural mother.

---

[10] Section 7541, subdivision (a), reads in full: "Notwithstanding Section 7540, if the court finds that the conclusions of all the experts, as disclosed by the evidence based on blood tests performed pursuant to Chapter 2 (commencing with Section 7550), are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly."

     e. *Preliminary conclusion: trial court did not err in refusing to join Amy or in granting Kim's motion to quash Amy's separate action.*

█ For the reasons discussed above, we hold, where, as here, a birth mother promptly comes forward to assert her legal maternity, and the child's father is undisputed and present in the action, the father's spouse cannot be the child's natural mother or the child's presumed mother through a gender-neutral reading of either section 7611, subdivisions (a) and (d), or section 7540.

Because Amy cannot legally be Nathan's mother under these circumstances, Amy cannot "claim[] an interest relating to the subject of the action" which would require her joinder under Code of Civil Procedure section 389, subdivision (a). Amy is not Nathan's natural mother or presumed mother and therefore is not a person who may be made a party to the action under Family Code section 7635, subdivision (b); for the same reasons, she is not an "interested person" within the meaning of section 7650, subdivision (a); and she cannot claim custody rights under rule 5.158(a) because Nathan is not a child of the marriage between Amy and father.

For these reasons, we find no error in either the trial court's denial of father's motion to join Amy or its grant of Kim's motion to quash Amy's independent action.

    4. *The statutory scheme does not violate equal protection or due process.*

     a. *Equal protection.* ·

Amy and father contend an interpretation of the statutory scheme which denies Amy joinder or standing violates equal protection.

Father and Amy rely on *Elisa B.* for the proposition that the statutory scheme, if interpreted to deny Amy's joinder, violates equal protection on the basis of sexual orientation. *Elisa B.* held a woman in a same-sex relationship with the biological mother could be declared the child's presumed mother under section 7611, subdivision (d), even though the biological mother is present in the action. (See *Elisa B. v. Superior Court, supra,* 37 Cal.4th at pp. 118–119, 125.) Father and Amy argue that to deny Amy a similar opportunity to establish status as a presumed mother effectively treats a heterosexual woman differently than a similarly situated woman in a same-sex relationship.

Relying on *Jesusa V.*, father and Amy also argue that the statutory scheme, if applied to deny Amy's joinder, violates equal protection on the basis of gender. *Jesusa V.* held a man who received a child into his home and held the child out as his own could qualify as the presumed father under section 7611, subdivision (d), even though the biological father also was a party to the proceedings. (*In re Jesusa V., supra*, 32 Cal.4th at pp. 603–604.) Father and Amy argue that to deny Amy a similar opportunity to assert her status as a presumed mother treats a woman differently than a similarly situated man.

These arguments are also without merit. "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) To prevail on either of their equal protection claims, father and Amy must first demonstrate that Amy is similarly situated to the individuals she describes who have asserted presumed parentage under the statutory scheme. As explained, Amy is not similarly situated to either the biological mother's same-sex partner in *Elisa B.* or the nonbiological presumed father in *Jesusa V.*

In a situation such as *Elisa B.*, where two women are same-sex partners, and one gives birth to a child while the other holds the children out as her own, *there is no third person who claims to be the child's second parent.* In contrast, a woman, such as Amy, who is married to the child's father and wishes to assert presumed maternity, is competing with the child's biological mother for maternal rights. Unlike the circumstances in *Elisa B.*, where it was appropriate to provide a *second* parent for the child, here two parents, Kim and father, already are present in the action. Therefore, we reject Amy's claim she is being denied equal protection based on her sexual orientation.

Likewise, Amy is not similarly situated to a nonbiological father, such as in *Jesusa V.*, who receives his wife's child into his home and holds the child out as his own. While a biological father's genetic contribution to his child may arise from nothing more than a fleeting encounter, the biological mother carries the child for the nine-month gestational period. Because of this inherent difference between men and women with respect to reproduction, the wife of a man who fathered a child with another woman is not similarly situated to a man whose wife was impregnated by another man. Therefore, it is appropriate for the Family Code to allow the birth mother's husband to claim presumed paternity when the biological father is present in the action, and not allow the wife of the biological father to do the same when the biological mother has promptly come forward to assert her parental rights. "The difference between men and women in relation to the birth process is a real one, and the principle of equal protection does not forbid

[the Legislature] to address the problem at hand in a manner specific to each gender." (*Tuan Anh Nguyen v. INS* (2001) 533 U.S. 53, 73 [150 L.Ed.2d 115, 121 S.Ct. 2053] [upholding a federal law imposing different requirements for citizenship of a child born to one citizen parent and one noncitizen parent, depending upon whether the citizen parent is the mother or the father].) Given Kim's role and presence as Nathan's biological mother, Amy is not similarly situated to a nonbiological presumed father.

Therefore, we reject father and Amy's equal protection arguments.

### b. *Due process.*

Father and Amy also contend that the statutory scheme, as applied to deny Amy joinder or standing, violates substantive due process and infringes on family privacy and the integrity of the marital family unit. This argument is unpersuasive. Amy and father are asserting a purported right to raise a child resulting from an extramarital relationship between father and another woman, so as to displace the biological mother. It is unfortunate these proceedings already have spanned nearly three years. However, Kim first sought to assert her maternal rights shortly after Nathan was born, and Kim has since enjoyed monitored visitation with Nathan. Under such circumstances, we perceive no substantive due process or other constitutional claim.

### 5. *Amy cannot assert equitable estoppel claim arising out of purported stepparent adoption agreement.*

Amy and father contend Amy has standing to assert parentage based on equitable estoppel. Relying on *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239 [284 Cal.Rptr. 18], they argue Kim is estopped to deny Amy's maternity. *Matthew B.* involved a surrogate mother who sought to withdraw her consent to a stepparent adoption and to obtain periods of custody. (*Id.* at pp. 1252–1253.)

Father and Amy's reliance on *Matthew B.* or on an equitable estoppel theory is misplaced. Kim's role was not that of a surrogate mother. Further, Father and Amy do not assert the purported stepparent adoption agreement executed by Kim is valid. Further, irrespective of whether the purported agreement is valid, father and Amy never pursued a stepparent adoption by Amy or took any steps to implement the purported agreement. Therefore, we reject their theory that Kim is estopped to deny Amy's maternity.

### 6. *Trial court did not err in failing to join Steven pursuant to Code of Civil Procedure section 389, subdivision (a).*

Father also contends the trial court erred in failing to join Steven, Kim's husband, because Steven is a mandatory party pursuant to Code of Civil Procedure section 389, subdivision (a).

We recognize *Sheldon P.* required joinder of a man who was a presumed father, even though he had little chance of prevailing on the merits. (See *County of Los Angeles v. Sheldon P., supra,* 102 Cal.App.4th at pp. 1344–1345.) Here, Steven is statutorily presumed to be Nathan's father under section 7611, subdivision (a), by virtue of his marriage to Kim. Because Steven theoretically has a valid claim to be Nathan's father, arguably he must be joined under Code of Civil Procedure section 389, subdivision (a).

However, Nathan's paternity is not an issue in this case. G.G. asserts he is Nathan's father, and Steven concurs. While Steven has not been joined formally as a party in the action, he has received notice of the action and an opportunity to be heard via his September 15, 2005 responsive declaration. In the declaration, Steven eschewed paternity, stating he agreed to enter into a binding waiver of a claim to parentage. Unlike in *Sheldon P.,* where there existed "the potential to deprive . . . the presumed father . . . of rights he wishes to assert," here Steven has agreed to waive all such rights. (*County of Los Angeles v. Sheldon P., supra,* 102 Cal.App.4th at p. 1345.) In *Sheldon P.,* there was at least a theoretical possibility that the absent party would " 'claim[] an interest relating to the subject of the action . . . .' " (*Id.* at p. 1344, citing Code Civ. Proc., § 389, subd. (a).) In marked contrast, Steven already has expressly waived any "interest relating to the subject of the action." (Code Civ. Proc., § 389, subd. (a).) Therefore, the trial court properly found Steven's joinder is not compulsory under Code of Civil Procedure section 389, subdivision (a).

## CONCLUSION

We conclude the trial court did not err either in denying father's motion to join Amy in the action or in granting Kim's motion to quash Amy's independent action. When a birth mother promptly comes forward to assert her legal maternity, and the child's father is undisputed and present in the action, the father's spouse cannot be presumed to be the child's mother under any gender-neutral reading of sections 7611, subdivisions (a) or (d), or 7540. Therefore, Amy cannot claim to be Nathan's mother. We further conclude, against father and Amy's contentions, that the trial court's refusal to treat Amy as a presumed mother does not violate equal protection or due process. Finally, we reject Amy and father's contentions that Amy has standing to assert equitable estoppel, and that Steven's joinder is mandatory.

## DISPOSITION

The order to show cause is discharged. Father's petition for writ of prohibition or other appropriate relief is denied. The order granting Kim's motion to quash and dismissing Amy's independent action is affirmed. Kim shall recover her costs.

Croskey, J., and Kitching, J., concurred.

The petition of appellant G.G. for review by the Supreme Court was denied November 29, 2006, S146841.